# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 13 C 870 | **DATE** | 6/13/2013 |
| **CASE TITLE** | Rutledge vs. City of Chicago et al | | |

**DOCKET ENTRY TEXT**

The Court grants in part with prejudice, grants in part without prejudice, and denies in part Defendants' motion to dismiss [11]. The only two claims remaining in this lawsuit are Plaintiff's Fourth Amendment unreasonable search claim and his equal protection *Monell* claim. The Court dismisses the City of Chicago Department of Buildings and Mayor Emanuel as Defendants to this lawsuit and substitutes the City of Chicago as a Defendant to this action. The Clerk's Office is directed terminate the City of Chicago Department of Buildings and Mayor Emanuel as Defendants and substitute the City of Chicago as a Defendant. The Court also grants Plaintiff leave to add the individual building inspector(s), who inspected his home on 12/3/12, as individual Defendants to this lawsuit. Plaintiff's failure to identify these individual building inspectors by 7/22/13 will result in the Court dismissing his Fourth Amendment claim with prejudice. Status hearing set for 8/6/13 is stricken and reset to 7/29/13 at 8:30 a.m.

■[ For further details see text below.]  Docketing to mail notices.

# STATEMENT

On February 4, 2013, pro se Plaintiff Joseph Rutledge filed the present lawsuit alleging that Defendants City of Chicago Department of Buildings and Chicago Mayor Rahm Emanuel deprived him of his constitutional rights by entering and inspecting his residence at 7917 S. Damen Avenue in Chicago, Illinois, while he was not there and without his consent. *See* 42 U.S.C. § 1983. Rutledge also brings an equal protection claim pursuant to *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), alleging that Defendants target African-American neighborhoods for unnecessary building inspections. Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, the Court grants in part with prejudice, grants in part without prejudice, and denies in part Defendants' motion. The only two remaining claims in this lawsuit are Rutledge's Fourth Amendment unreasonable search claim and his equal protection *Monell* claim. The Court dismisses the City of Chicago Department of Buildings and Mayor Emanuel as Defendants to this lawsuit and substitutes the City of Chicago as a Defendant to this action. The Court also grants Rutledge leave to add the individual building inspector(s), who inspected his home on December 3, 2012, as individual Defendants to this lawsuit. Rutledge's failure to identify these individual building inspectors by July 22, 2013 will result in the Court dismissing his Fourth Amendment claim with prejudice.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). Courts may also consider documents attached to the pleadings without converting the motion to dismiss into a motion summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 556 (7th Cir. 2012); Fed.R.Civ.P. 10(c).

## BACKGROUND

Construing his pro se Complaint liberally, *see Gomez v. Randle,* 680 F.3d 859, 864-65 (7th Cir. 2012), Rutledge alleges that on December 3, 2012, building inspectors with the City of Chicago Department of Buildings unlawfully and unreasonably entered his home and inspected it without Rutledge being present and without consent. (R. 1, Compl. ¶ 10.) Prior to this inspection, Rutledge alleges that the City received a telephone call that there was no heat in the house at that time. (*Id*. at 5, ¶ 1.) Rutledge further asserts that while the inspectors were in his home, the inspectors listed several other housing violations. (*Id*. ¶ 10.) The City then fined Rutledge $540 for these code violations. (*Id*. at 5, ¶ 4.)

Rutledge, who is African-American, maintains that the City and its agents have violated his equal protection rights because Defendants target homes in African-American communities for inspection. (*Id*.) Rutledge further alleges that the City does not target white communities for similar inspections. (*Id*. at 6, ¶ 1.)

In addition, Rutledge is challenging the administrative hearings about his code violations that took place in front of the City's Department of Administrative Hearings. (*Id*. ¶ 14.) According to the administrative records attached to Defendants' motion and briefs, the City issued two administrative complaints as a result of the December 3, 2012 inspection of Rutledge's residence. (R. 11, Defs.' Mot., Ex. 1.) After a contested hearing on January 30, 2013, the City's Department of Administrative Hearings found that Rutledge was liable for failing to maintain facilities or utilities in a safe, working order and fined him $540. (*Id*. at 1-2.) There was a second administrative hearing held on February 22, 2013, concerning the second administrative complaint, but it appears that the Administrative Law Judge continued the case until April 12, 2013. (Defs.' Mot., Ex. 2, at 1-2.)

Finally, Rutledge alleges that he is under Chapter 13 bankruptcy protection in the Northern District of Illinois Bankruptcy Court, case number 12-24189, and the City's actions violate the automatic bankruptcy stay pursuant to 11 U.S.C. § 362.[1]

---

[1] Rutledge also mentions facts concerning his previously settled lawsuit with the City regarding the seizure of his automobile in November 2008. *See Rutledge v. City of Chicago*, No. 08 C 7270. These facts have no bearing on the present lawsuit. Similarly, in his Complaint and response brief, Rutledge mentions that Chicago Police arrested his adult daughter while she was driving Rutledge's car and that his cars were towed. Construing Rutledge's pro se allegations

## ANALYSIS

I.  **Proper Defendant**

First, Defendants maintain that the proper Defendant to this lawsuit is the City of Chicago. The Court agrees because individual departments within the City of Chicago are not separate legal entities from the City, therefore, the Department of Buildings is a non-suable entity. *See Chan v. Wodnicki,* 123 F.3d 1005, 1007 (7th Cir. 1997). Further, Rutledge has not made any specific allegations against Mayor Emanuel or the Mayor's personal involvement in this matter. *See Surita v. Hyde,* 665 F.3d 860, 875 (7th Cir. 2011). Therefore, Rutledge's claim against Mayor Emanuel is in the mayor's official capacity, which is the same as a claim against the City itself. *See Walker v. Sheahan,* 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself."). The Court therefore grants Defendants' motion to dismiss the City of Chicago Department of Buildings and Mayor Emanuel as Defendants from this lawsuit and substitutes the City of Chicago as the proper Defendant.

II.  **Fourth Amendment Claim**

Construing his pro se Complaint liberally, Rutledge alleges that City officials violated his due process and Fourth Amendment rights by entering his property and enforcing the local building codes without any authority to do so.[2] The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment." *Fitzgerald v. Santoro,* 707 F.3d 725, 730 (7th Cir. 2013) (citation omitted). Accordingly, warrantless searches of private property are presumptively unreasonable subject to a few well-established exceptions. *See id.*; *United States v. Delgado,* 701 F.3d 1161, 1164 (7th Cir. 2012). Administrative inspections, such as building code inspections, are searches within the meaning of the Fourth Amendment, and thus, "warrantless inspections of private property by municipal administrative officials without proper consent may be unconstitutional." *Montville v. Lewis,* 87 F.3d 900, 902 (7th Cir. 1996); *see also Doe v. Heck,* 327 F.3d 492, 509 (7th Cir. 2003) ("the amendment's prohibition against unreasonable searches and seizures protects against warrantless intrusions during civil as well as criminal investigations by the government."). The Supreme Court has "developed a probable cause test for administrative-type searches of residential buildings which [i]s less stringent than that required in criminal investigations." *Matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335, 1339 (7th Cir. 1979). In particular, "an administrative warrant can be issued 'if there is a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied.'" *Montville,* 87 F.3d at 903 (citation omitted).

---

liberally, these facts do not have any bearing on Rutledge's claims concerning the December 3, 2012 building inspection.

[2] Any substantive due process claim is without merit because the Fourth Amendment specifically protects the rights Rutledge alleges the City infringed upon. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Moreover, although Rutledge mentions a conspiracy and cites 42 U.S.C. §§ 1985, 1986 in his Complaint, he fails to address Defendants' arguments pertaining to Sections 1985 and 1986 in his response brief, and thus he has abandoned these claims. *See Czarniecki v. City of Chicago,* 633 F.3d 545, 549 (7th Cir. 2011).

Viewing the Complaint's allegations and all reasonable inferences in Rutledge's favor, he alleges that City inspectors unlawfully and unreasonably searched his home as a result of a complaint that the furnace was not functioning. In his Complaint, Rutledge has alleged sufficient factual details about the December 3, 2012 inspection and — based on these facts — he believes that the inspection violated his Fourth Amendment right against unreasonable searches, thus giving the City "fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555; *see also Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory).

Meanwhile, the City fails to address the Fourth Amendment standard for administrative searches, but instead, focuses on Rutledge's argument that he did not give consent for the City's inspectors to enter his private property. The City specifically argues that the inspectors had apparent authority to search the premises — a factual argument that is not appropriate at this stage of the proceedings. *See United States v. Groves,* 470 F.3d 311, 319 (7th Cir. 2006). The City also argues that from the record, it appears that the tenant or resident of Rutledge's house consented to the City inspector's search of the home.[3] The City's arguments, however, concern factual disputes, and, as the Seventh Circuit explained over 25 years ago, "the defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). This holds true after the Supreme Court's decisions in *Twombly* and *Iqbal. See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). Therefore, the City's arguments are unavailing at this time.

Nevertheless, although Rutledge's claim may lie against the unnamed individual building inspectors, the City cannot be held liable because the doctrine of respondeat superior does not apply to constitutional violations brought pursuant to Section 1983. *See Milestone v. City of Monroe, Wis.,* 665 F.3d 774, 780 (7th Cir. 2011) ("There is no respondeat superior liability under § 1983; the Supreme Court "distinguish [es] acts of the municipality from acts of employees of the municipality.") (citation omitted). The Court therefore grants the City's motion to dismiss Rutledge's Fourth Amendment claim against it with prejudice, but also grants Rutledge leave to amend his Complaint to name the individual City of Chicago building inspectors who inspected his home on December 3, 2013 as Defendants to this lawsuit.

## II.  Equal Protection Monell Claim

Next, construing his allegations liberally, Rutledge alleges an equal protection *Monell* claim against the City arguing that the City has a custom or practice of targeting African-American neighborhoods for building inspections and that the City gives African-American homeowners unwarranted building code citations. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, under 'like circumstances and conditions,' people must be treated alike, unless there is a rational reason for treating them differently." *LaBella*

---

[3] In making this argument, the City contends that the "obvious implication" from the allegations is that the occupant of the residence who complained about the lack of heat let the inspector into the home. (R. 11, Defs.' Mot., at 6.) At the motion to dismiss stage, however, courts must draw all reasonable inferences in the plaintiff's favor. *See White v. Marshall & Ilsley Corp.,* 714 F.3d 980, 985 (7th Cir. 2013).

*Winnetka v. Village of Winnetka,* 628 F.3d 937, 941-42 (7th Cir. 2010) (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008)). In other words, equal protection "most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, ... or because the person is a member of a group that is the target of irrational government discrimination." *Abcarian v. McDonald,* 617 F.3d 931, 938 (7th Cir. 2010).

Viewing the allegations and all reasonable inferences in Rutledge's favor, he alleges that the City has a custom or policy of targeting homes in African-American communities, but not white communities, for building inspections and that his home is in one of the targeted areas. Rutledge further alleges that as evidence of being targeted, the building inspectors charged him with non-code violations, yet the City does not target white homeowners for such minor violations. In addition, Rutledge asserts that the City's policy was the moving force behind his equal protection deprivation.

In its motion, the City argues that because Rutledge has not sufficiently alleged an underlying equal protection violation involving a municipal employee, he cannot pursue his *Monell* claim. *See Schor v. City of Chicago,* 576 F.3d 775, 779 (7th Cir. 2009); *see also Sallenger v. City of Springfield, Ill.,* 630 F.3d 499, 504 (7th Cir. 2010). The Seventh Circuit, however, has held that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook County Sheriff's Dept.,* 604 F.3d 293, 305 (7th Cir. 2010). The *Thomas* decision further teaches, "to determine whether the [City's] liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*

Looking to the nature of Rutledge's constitutional claims, his theory of municipal liability, and any potential defenses, such as qualified immunity, Rutledge's equal protection claim that the City has a custom or policy of targeting African-American homes for building code inspections and violations is not dependent on his claim that individual building inspectors violated his Fourth Amendment rights when they unlawfully entered his home on December 3, 2012. As such, a jury's verdict in favor of the individual inspectors, yet against the City would not be inconsistent because the *Monell* claim is not contingent on the building inspector's conduct on December 3, 2012. *See id.* In short, the City's policy could have inflicted a constitutional injury without the individual defendants' alleged misconduct. *See Awalt v. Marketti,* No. 11 C 6142, 2012 WL 1161500, at *11 (N.D. Ill. Apr. 9, 2012) ("A plaintiff alleging a *Monell* claim can succeed against a municipality on that claim despite failing to demonstrate to a jury that a particular individual defendant is liable for the unconstitutional acts alleged, so long as the two results are compatible."). Thus, looking at Rutledge's allegations, he has plausibly alleged that the City's policy is the moving force behind his constitutional deprivation. *See Teesdale,* 690 F.3d at 833-34; *see also Iqbal,* 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Therefore, the Court denies Defendants' motion to dismiss Rutledge's equal protection *Monell* claim.

### III. Sixth Amendment Claim

For the first time in his response brief, Rutledge asserts that Defendants' conduct denied him his Sixth Amendment right to confrontation at his administrative hearing. Rutledge's argument is without merit because the Sixth Amendment does not apply to civil lawsuits or administrative proceedings. *See S.E.C. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 742, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984) ("the Confrontation Clause does not come into play until the initiation of criminal proceedings"). Also, Rutledge did not have a Sixth Amendment right to counsel at his administrative hearing. *See Turner v. Rogers,* ___ U.S. ___, 131 S.Ct. 2507, 2516, 180 L.Ed.2d 452 (2011) ("the Sixth Amendment does not govern civil cases"). As such, Rutledge's Sixth Amendment claim is not actionable under the circumstances.

### IV. Rooker-Feldman

Next, in his Complaint and response brief, Rutledge challenges the findings of the City's Department of Administrative Hearings concerning the hearings held on January 30, 2013 and February 22, 2013. As part of this claim, Rutledge vaguely asserts that he was denied procedural due process. Rutledge's challenges to the administrative findings and hearings are barred by the *Rooker-Feldman* doctrine which precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1056 (2006). Indeed, the January 30, 2013 administrative hearing findings explain to Rutledge how he can appeal the order to the Circuit Court of Cook County. (R. 11, 1/30/13 Admin. Order, at 2.). Therefore, the Court does not have jurisdiction to review the administrative hearings and findings, and thus, this claim must fail. *See, e.g., Mehta v. Attorney Registration & Disciplinary Comm'n of the Supreme Court of Ill.,* 681 F.3d 885, 886 (7th Cir. 2012) (per curiam).

### V. Automatic Bankruptcy Stay

Likewise, Rutledge's arguments concerning the bankruptcy stay are without merit because the City's actions fall within the bankruptcy stay exception for governmental entities enforcing regulatory powers. *See* 11 U.S.C. § 362(b)(4); *Village of Rosemont v. Jaffe,* 482 F.3d 926, 938 (7th Cir. 2007); *see also Matter of Towers,* 162 F.3d 952, 956 (7th Cir. 1998) ("state law-enforcement actions are outside the scope of the stay"). Accordingly, Rutledge does not have an actionable claim based on his bankruptcy stay.

### VI. Attorney's Fees and Punitive Damages

On a final note, Rutledge seeks compensatory damages, injunctive relief, and attorney's fees pursuant to 42 U.S.C. § 1988. Because pro se litigants who are not lawyers cannot recover attorney's fees under Section 1988, *see Smith v. De Bartoli,* 769 F.2d 451, 453 (7th Cir. 1985), the Court strikes Rutledge's request for attorney's fees from his Complaint. Similarly, Rutledge cannot recover punitive damages from the City pursuant to the Illinois Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-102.