**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH RUTLEDGE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13 C 0870 |
| | ) | |
| v. | ) | Judge Amy St. Eve |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The Court, in its discretion, denies Defendant's motion for partial reconsideration [26].

**STATEMENT**

Before the Court is Defendant City of Chicago's motion for partial reconsideration in regard to the Court's June 13, 2013 Minute Order denying the City's motion to dismiss pro se Plaintiff Joseph Rutledge's equal protection claim brought pursuant to *Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For purposes of this order, the Court presumes familiarity with the June 13, 2013 Minute Order.

**LEGAL STANDARD**

Because the Court's June 13, 2013 Minute Order did not dispose of this case in its entirety, the Court reviews the City's motion for reconsideration under Federal Rule of Civil Procedure 54(b), which states in relevant part:

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders are "subject to revision at any time before the entry of judgment adjudicating all the claims." *See* Fed.R.Civ.P. 54(b); *see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Peterson v. Lindner,* 765 F.2d 698, 704 (7th Cir. 1985) (district courts have "inherent power to modify or rescind interlocutory orders prior to final judgment"). A motion to reconsider an interlocutory order is "only appropriate where a court has misunderstood a party, where the court

has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shields,* 665 F.3d 846, 860 (7th Cir. 2011) (citation omitted).

## FACTUAL BACKGROUND

In the June 13, 2013 Minute Order, the Court construed Plaintiff's pro se Complaint liberally and outlined the following facts. In his Complaint, Plaintiff alleges that on December 3, 2012, building inspectors with the City of Chicago Department of Buildings unlawfully and unreasonably entered his home and inspected it without Plaintiff being present and without his consent. Further, Plaintiff alleges that while the inspectors were in his home, they listed several housing violations and then the City fined him for these code violations. Plaintiff, who is African-American, asserts that the City and its agents have violated his equal protection rights because Defendants target homes in African-American communities for inspection. He further alleges that the City does not target white communities for similar inspections.

Relevant to the present motion for reconsideration is the Court's discussion of Plaintiff's equal protection claim in the June 13, 2013 Minute Order:

> [C]onstruing his allegations liberally, Rutledge alleges an equal protection *Monell* claim against the City arguing that the City has a custom or practice of targeting African-American neighborhoods for building inspections and that the City gives African-American homeowners unwarranted building code citations. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, under 'like circumstances and conditions,' people must be treated alike, unless there is a rational reason for treating them differently." *LaBella Winnetka v. Village of Winnetka,* 628 F.3d 937, 941-42 (7th Cir. 2010) (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008)). In other words, equal protection "most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, ... or because the person is a member of a group that is the target of irrational government discrimination." *Abcarian v. McDonald,* 617 F.3d 931, 938 (7th Cir. 2010).

> Viewing the allegations and all reasonable inferences in Rutledge's favor, he alleges that the City has a custom or policy of targeting homes in African-American communities, but not white communities, for building inspections and that his home is in one of the targeted areas. Rutledge further alleges that as evidence of being targeted, the building inspectors charged him with non-code violations, yet the City does not target white homeowners for such minor

violations. In addition, Rutledge asserts that the City's policy was the moving force behind his equal protection deprivation.

In its motion, the City argues that because Rutledge has not sufficiently alleged an underlying equal protection violation involving a municipal employee, he cannot pursue his *Monell* claim. *See Schor v. City of Chicago,* 576 F.3d 775, 779 (7th Cir. 2009); *see also Sallenger v. City of Springfield, Ill.,* 630 F.3d 499, 504 (7th Cir. 2010). The Seventh Circuit, however, has held that "a municipality can be held liable under *Monell,* even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas v. Cook County Sheriff's Dept.,* 604 F.3d 293, 305 (7th Cir. 2010). The *Thomas* decision further teaches, "to determine whether the [City's] liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*

Looking to the nature of Rutledge's constitutional claims, his theory of municipal liability, and any potential defenses, such as qualified immunity, Rutledge's equal protection claim that the City has a custom or policy of targeting African-American homes for building code inspections and violations is not dependent on his claim that individual building inspectors violated his Fourth Amendment rights when they unlawfully entered his home on December 3, 2012. As such, a jury's verdict in favor of the individual inspectors, yet against the City would not be inconsistent because the *Monell* claim is not contingent on the building inspector's conduct on December 3, 2012. *See id.* In short, the City's policy could have inflicted a constitutional injury without the individual defendants' alleged misconduct. *See Awalt v. Marketti,* No. 11 C 6142, 2012 WL 1161500, at *11 (N.D. Ill. Apr. 9, 2012) ("A plaintiff alleging a *Monell* claim can succeed against a municipality on that claim despite failing to demonstrate to a jury that a particular individual defendant is liable for the unconstitutional acts alleged, so long as the two results are compatible."). Thus, looking at Rutledge's allegations, he has plausibly alleged that the City's policy is the moving force behind his constitutional deprivation. *See Teesdale,* 690 F.3d at 833-34; *see also Iqbal,* 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Therefore, the Court denies Defendants' motion to dismiss Rutledge's equal protection *Monell* claim.

(R. 17, 6/13/13 Minute Order, at 4-5.)

By leave of Court, pro se Plaintiff has filed an Amended Complaint — parts 1 and 2 — which are the subject of a motion to strike and motion to dismiss that the Court will discuss in another order.

3

## ANALYSIS

In its Rule 54(b) motion to reconsider, the City maintains that the Court misunderstood its argument seeking to dismiss Plaintiff's equal protection claim. To clarify, the City asserts that it argued Plaintiff's allegations of racial discrimination were so vague that the City was uncertain as to what the claim was. Moreover, the City also argues that it claimed that Plaintiff failed to sufficiently allege a *Monell* policy or practice under the federal pleading standards.

To establish liability against the City of Chicago under *Monell*, Plaintiff must eventually show that: (1) he suffered a deprivation of a constitutional right, (2) as a result of either an express municipal policy, widespread custom or practice that is so permanent that it constitutes a custom or practice, or deliberate act of a decision-maker with final policymaking authority, that (3) proximately caused his constitutional injuries. *See Teesdale v. City of Chicago,* 690 F.3d 829, 834 (7th Cir. 2012); *Ovadal v. City of Madison,* 416 F.3d 531, 535 (7th Cir. 2005).

Construing pro se Plaintiff's original "Complaint for Violation of Constitutional Rights" liberally and viewing his allegations in a light most favorable to him — as the Court is required to do at this procedural posture — it appears that Plaintiff used the United States District Court for the Northern District of Illinois, Eastern Division's form, entitled "Complaint for Violation of Constitutional Rights," as a template for his allegations. The instructions for this form read as follows:

> This form complaint is designed to help you, as a pro se plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.

Plaintiff followed these directions and answered the form's questions and also provided additional information. Although Plaintiff's allegations are not a model of clarity, he alleges that on December 3, 2012, building inspectors with the City of Chicago Department of Buildings unlawfully and unreasonably entered his home and inspected it without Plaintiff being present and without his consent. Plaintiff further alleges that while the inspectors were in his home, they listed several housing violations and that the City then fined him for these code violations. Plaintiff, who is African-American, alleges that the City and its agents have violated his equal protection rights because they target homes in African-American communities for inspections, but they do not target white communities for similar inspections. He further clarifies that the City not only targets African-American homes, but the City has a policy of targeting these homes when no one is present for the home inspections. Also, he states that Defendants permit, encourage, and tolerate this policy. In addition, Plaintiff alleges that Defendants have a discriminatory animus toward African-Americans, especially young black men in the targeted areas. Plaintiff further supports his practice and policy allegations by alleging that the City has a

failure to train, discipline, and supervise its agents that carry out this policy and practice.

Based on these allegations, pro se Plaintiff has sufficiently alleged his *Monell* equal protection claim under *Twombly* and *Iqbal*. He has given enough factual details about his equal protection claim based on race to put Defendants on notice of his claim. *See Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). Specifically, he alleges racial animus in the inspection of homes in African-American communities as opposed to white communities.[1] Also, as discussed in the Court's June 13, 2013, he has plausibly alleged a widespread custom or practice as required under *Monell,* including his failure to train allegations pursuant to *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

As discussed, the federal pleading standards for pro se plaintiffs are considerably relaxed, even after *Twombly* and *Iqbal. See Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1027 (7th Cir. 2013). The City fails to recognize this standard in its motion for reconsideration. Also, as the Seventh Circuit teaches, Rule 8(a) "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim" rather than on technicalities that might keep plaintiffs out of court.'" *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). In sum, construing pro se Plaintiff's allegations liberally and viewing the allegations in his favor, Plaintiff has sufficiently alleged an equal protection/*Monell* claim that is plausible on its face. *See Twombly*, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable"); *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). As such, the Court, in its discretion, denies the City's motion for partial reconsideration.

**Dated:** December 12, 2013

_____

**AMY J. ST. EVE**
**United States District Court Judge**

---

[1] The City's reliance on the dissent in *Del Marcelle v. Brown County Corp.,* 680 F.3d 887 (7th Cir. 2012) (en banc), does not save the day.