**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH RUTLEDGE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Case No. 13 CV 00870** |
| **v.** | ) | |
| | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | **Plaintiff Demands** |
| Defendant. | ) | **Trial By Jury** |

**DEFENDANTS CITY OF CHICAGO, VALLIE SMITH, AND DON KERSICK
IN ANSWER TO PLAINTIFF'S AMENDED COMPLAINT**

Defendants City of Chicago ("City"), Vallie Smith, and Don Kersick, by and through

their attorney, Stephen Patton, Corporation Counsel of the City of Chicago, answer the Amended

Complaint of Plaintiff (Docket No. 45).

1.      The inspectors were following a policy that is based on racial considerations and
targeted properties, which violates the U.S. constitution, *Monell* U.S. 436. The defendants permit
and encourage this policy. The City has a failure to train discipline and supervise its agents that
carry out this policy and practice. *Thomas vs. Cook County Sheriff Dept.*, 604 F3d.

**Answer:**      Defendants deny the allegations of the first sentence of Paragraph , except

that they admit that Monell v. Department of Social Servs. of New York

City, is reported at 436 U.S. 658 (1978).  Answering further, Defendants

deny the allegations of the second sentence.  Answering further, the City,

the only Defendant to which sentence three is directed, denies the

allegations of the third sentence.  Answering further, Defendants admit

that Thomas v. Cook County Sheriff Dep't is reported at 604 F.3d 293 (7th

Cir. 2009).

2.      On December 3, 2012, Vallie Smith, an inspector with the Chicago Department of Buildings, unlawfully and unreasonably entered my home at 7917 Damen Avenue in Chicago and inspected it without my presence and without my consent or law. According to City Hall, 9th Floor, Department of Buildings, it was because of a broken window.  Erma Rodriguez, supervisor for Vallie Smith and Kersie, sent them out without any authority to inspect plaintiff's home.  The inspectors, Smith and Kersie, did not have an administrative warrant to enter plaintiff's property.  It was a non-consensual search for alleged code violations, resulting in the deprivation of Constitutional rights.  *Mapp vs. Ohio*, 367 U.S. 693.

**Answer:**      Defendants admit that Defendant Vallie Smith is an inspector with the

Chicago Department of Buildings, who on December 3, 2012, inspected

the structure ("building") on the property at 7917 S. Damen Avenue in

Chicago ("property") and that Plaintiff was neither present nor specifically

consented to that particular search on that date.  Answering further,

Defendants deny the remaining allegations of sentence 1of Paragraph 2.

Answering further, Defendants admit that the genesis of the inspection

was a citizen report to the City of broken windows at the building.

Answering further, Defendants deny the remaining allegations of sentence

2 of Paragraph 2.  Answering further, Defendants admit that Erma

Rodriguez is a supervisor of Defendant Vallie Smith, and denies the

remaining allegations of sentence 3 of Paragraph 2.  Answering further,

Defendants admit that the inspection involved alleged violations of the

Municipal Code of Chicago and denies the remaining allegations of

sentence 4 of Paragraph 2.  Defendants admit that Mapp v. Ohio is

reported at 367 U.S. 643 (1961).

2

3.      According to the defendant, third-party phone calls are the basis for this inspection.  The defendant says it generated a task force and assigned Vallie Smith.  This Constitutional deprivation took place at the direction of Erma Rodriguez, Supervisor, with her knowledge and consent.  It was a deliberate connection of policies and practices of State inspectors, who disregarded, ignored plaintiff's Fourth Amendment rights.  *City of Canton vs. Harris*, 489 U.S. 378.  Erma Rodriguez, supervisor for both inspectors, knew that the inspections were unreasonable.  Validity of such consent was vitiated by the fact that it was promised on existence of regulations which were not authorized by statute and which were unconstitutional due to a failure to limit the discretion of State officials conducting the search.  *Serpos vs. Schmidt*, 1987.  State officials violated clearly established Fourth Amendment law in conducting a series of warrantless searches.

**Answer:**      Defendants admit that a telephone call may be the genesis of a work order for a Department of Buildings inspection and denies the remaining allegations of sentence 1 of Paragraph 3.  Answering further, Defendants deny the allegations of sentences 2, 3, 4, 7, and 8 of Paragraph 3.  Answering further, Defendants admit that City of Canton v. Harris is reported at 489 U.S. 378 (1989).  Answering further, Defendants admit that Erma Rodriguez was a supervisor of Defendant Vallie Smith, and denies the remaining allegations of sentence 6 of Paragraph 3.

4.      The number of searches was grossly disproportionate to the number of searches in similar or Caucasian neighborhoods.  December 3 and 6, 2012.  *Awalt vs. Marketti*, ND Ill. (April 9, 2012)  Acting under the color of law, defendant worked a denial of plaintiff's rights and privileges or immunities secured by the United States Constitution or by Federal law and guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the U.S.

**Answer:**      Defendants deny the allegations of Paragraph 4, but admit that the court issued a memorandum opinion and order in the case of Awalt v. Marketti, No. 11 C 6142, 2012 WL 1161500 (N.D. Ill. Apr. 9, 2012).

5.      As a result, they conspired to commit fraud on both the court and myself.  The administrative document and administrative complaint reads:  Group Target.  The defendant seems to have a problem understanding this.  The alleged civil rights violation resulted from custom and practice of the City.

**Answer:**      Defendants admit that the administrative complaints and certain other

documents in the administrative records concerning Plaintiff contain the notation "Case Group

Target" or "Order Type Target."  Answering further, Defendants state that the designation

"Target" was simply an administrative designation that the City's Law Department was primarily

responsible for the case during its pendency before the City's Department of Administrative

Hearings ("DOAH").  Answering further, Defendants state that conversely, "Non-Target" cases

was simply an administrative designation that the City's Department of Housing would be

primarily responsible for the case during its pendency before DOAH.  Answering further,

Defendants state that the "Target" or "Non-Target" designation had no other meaning

whatsoever.  Defendants deny the remaining allegations of Paragraph 5.

6.      Warrantless inspections may be unreasonable and constitutionally objectionable if they are not authorized by law.  *Darvin vs. Dewey*, 1986.  In addition, while the demand to inspect may be issued by the agency, it may not be made or enforced by the inspectors in the field.  *See vs. Seattle.*

**Answer:**      Defendants admit that warrantless searches must be supported by a legally

acceptable exception to any applicable warrant requirement under the

Constitution.  Answering further, Defendants were unable to find a case

under the search title(Darvin /5 Dewey) in the SCT, CTA, DCT or

ALLSTATES databases in Westlaw and thus lacks knowledge or

information sufficient to form a belief about the truth of the allegation.

4

Answering further, Defendants admit that <u>See v. City of Seattle</u> is reported

at 387 U.S. 541 (1967).   Answering further, Defendants admit that an

agency may initiate an inspection.   Answering further, Defendants deny

the remaining allegations of Paragraph 6.


7.      Defendant's argument is based on third-party consent and third-party phone calls. The defendant (City) says it received a telephone complaint from a neighbor of the building, alerting the City to a broken window at the building, Exhibit 2 at 42.  The complaint, in turn, generated a task  for inspection that was assigned to Defendant Valley Smith.  Her inspection took place on the morning of Monday, December 3, 2012.  Defendant goes on to say that two hours and one minute later, at 1:52 p.m., on December 3, the City received another telephone complaint about the building, Exhibit 1 at 5.  He says the call was from Yolanda Lasley, complaining about the lack of heat at the building.  Yolanda Lasley says she never called the City.

**Answer:**      Defendants admit that its defense is based in part on complaints received

by the City concerning the building and the property and on consent to

inspection.  Defendants admit the allegations of sentences 2, 3, 4, 5, 6, and

7.  Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations of sentence 8.


8.      Another inspection took place on December 6, 2012, by Inspector Don Kersick. On December 3, 2012, we know Yolanda Lasley did not make the call to the City.  Defendant City says he cited the building for an inoperable furnace.  Defendant has no reason for inspection other than an unknown phone call.  He wants us to believe that this phone call triggered a task force for a broken window.  (*Mapp vs. Ohio*), 367, page 7 of 15, page ID 27, Document #11, Defendant (City) says the City merely responded to a complaint about the lack of heat and reacted to the "deplorable conditions" found on the premises, which is unreasonable and does not comply with the Fourth Amendment.  Ms. Lasley says she never called in the complaint.  We are left with an unknown caller.  The City fails to address the Fourth Amendments standard for administrative searches.

**Answer:**      Defendants admit the allegations of sentence 1.  Answering further,

Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations of sentence 2. Answering further, Defendants admit that one of the items Plaintiff was cited for as a result of the December 6, 2012 inspection was an inoperable furnace. Answering further, Defendant denies the allegations of sentence 4. Answering further, Defendant denies the allegations of sentence 5 and further answers that the City did not create or trigger a task force to address deficiencies on the property or at the building, or that one or two inspectors constitutes a task force. Answering further, the City admits that the genesis of the December 6, 2012 inspection was a telephone complaint of a lack of heat in the building, and that the inspector found deplorable conditions in the building. Answering further, Defendants lacks knowledge or information sufficient to form a belief about the truth of the allegations of sentences 7 and 8. Defendants deny the allegations of sentence 9 and the remaining allegations of Paragraph 8.

9.    The defendant argues that I cannot state a viable Fourth Amendment claim because Yolanda Lasley let the building inspectors into the premises. She did so under coercion and duress. Yolanda Lasley is a felon who spent 14 years in Dwight Women's Prison; she is also an addict whom I have been trying to evict for the last two years. She claims to have established residence. She came to live at my address after her mother passed away. She is not a tenant, she pays no rent, and she will say or do anything for drugs. Police come to my house just about every day for complaints about her and her daughter.

**Answer:**    Defendants admit the allegations of sentences 1 and 4. Answering further, Defendants deny the allegations of sentences 2 and 7. Answering further,

6

Defendants lacks knowledge or information sufficient to form a belief

about the truth of the allegations of sentences 3, 5 and 6.

10.     District Court imposes on law enforcement officers a duty to inquire further as to a third party's authority to consent to a search if the surrounding circumstances make that person's authority questionable. *Rodriguez*, 497 U.S. at 188-189.

**Answer:**          Defendants admit that in Illinois v. Rodriguez, 497 U.S. 177, 188-89

(1990) (citation omitted), the Supreme Court stated: "Even when the

invitation is accompanied by an explicit assertion that the person lives

there, the surrounding circumstances could conceivably be such that a

reasonable person would doubt its truth and not act upon it without further

inquiry.  As with other factual determinations bearing upon search and

seizure, determination of consent to enter must 'be judged against an

objective standard: would the facts available to the officer at the moment .

. . "warrant a man of reasonable caution in the belief' that the consenting

party had authority over the premises? . . . .  If not, then warrantless entry

without further inquiry is unlawful unless authority actually exists.  But if

so, the search is valid."  Answering further, Defendants deny the

remaining allegations of Paragraph 10.

11.     The inspectors could not have reasonably believed that she had common authority over the property (apparent authority). She did not give her consent voluntarily.  The Supreme Court considered the requirement fro [sic.] a valid consent search in *Schnecklith vs. Bustamonte*, 412 U.S. 218.

**Answer:**          Defendants deny the allegations of sentences 1 and 2.  Answering further,

Defendants admit that the Supreme Court upheld the constitutionality of

warrantless consent searches under certain circumstances in <u>Schneckloth</u>

<u>v. Bustamonte</u>, 412 U.S. 218 (1973).

12.     Defendants coerced her into it with promises and favors.  She says she gave
money for the furnace, yet the furnace was not fixed by defendants.  Nor was the
money returned.

**Answer:**     Defendants deny the allegations of Paragraph 12, except that Defendants

admit that they did not fix the furnace in the building.

13.     The issue before the court was the prosecution's burden to prove that the third
party voluntarily consented to the search.  A court must take into account all of the surrounding
factors to judge voluntariness, a totality of the circumstances.  *Redmond vs. State of Maryland
Appellate Court*.  There is no tenant agreement or rent receipts.  His only proof of apparent
authority is a claimed cell phone bill.  She showed no identification.

**Answer:**     Defendants admit that in <u>Redmond v. State</u>, 213 Md.App. 163, 73 A.3d

385 (2013), the Maryland Court of Special Appeals held that the consent

to search appellant's residence in that case was not voluntarily given

where the police officers invented a fictious criminal investigation as a

ruse to obtain entry to the home and that in any event the police officers

exceeded the scope of the consent which was limited to searching for the

fictious suspect.  Answering further, the Maryland Court of Special

Appeals stated at 213 Md. App. at 177, 73 A.3d at 394 (citations omitted)

that, "A search conducted pursuant to valid consent, i.e., voluntary and

with actual or apparent authority to do so, is a recognized exception to the

8

warrant requirement. . . . The voluntariness, vel non, of a consent is a
question of fact determined under the totality of the circumstances."
Answering further, Defendants admit that at those same pages the
Maryland Court of Special Appeals stated that in the prosecution of the
underlying offense in a criminal case, the government bears the burden of
demonstrating consent to a warrantless search was voluntary. Answering
further, Defendants lack knowledge or information sufficient to for a belief
about the truth of sentence 4. Answering further, Defendants deny the
allegations of sentence 5. Answering further, Defendants admit the
allegations of sentence 6.

14. Defendants listed the house as deplorable. Any reasonable person would have
known she did not have apparent authority. Yolanda Lasley is often high on drugs (cocaine) and
is a felon who needs to be in rehab. Her consent is unreasonable. When inspectors noticed this,
they had racial animus towards me.

**Answer:** Defendants admit that Defendant Donald Kersick found and stated in his
report that conditions within the building were deplorable. Answering
further, Defendants deny the allegations of sentences 2, 4, and 5.
Answering further, Defendants lacks knowledge or information sufficient
to form a belief about the truth of the allegations of sentence 3.

15. In my absence, Yolanda Lasley admitted inspectors to premises under coercion
while high on drugs.

**Answer:** Defendants admit that Yolanda Lasley admitted City inspectors into the

9

building without the presence of Plaintiff, and deny the remaining

allegations of Paragraph 15.


16.     Facts are sufficient to show defendant's alleged conduct violated the law the law was clearly established.

**Answer:**     Defendants deny the allegations of Paragraph 16.


17.     I wish to challenge the Constitutional and statutory basis for the inspections on 12.03.12 and 12.06.12.

**Answer:**     Defendants admit that Plaintiff is challenging the constitutional basis for

the inspections undertaken of the building and/or property on December 3,

2012, and December 6, 2012.  Defendants deny that he has allegations

concerning a statutory challenge to the searches because Plaintiff has

failed to identify any statute he believes was violated.


18.     It was premised on the existence of regulations which were not authorized by statute and which were unconstitutional due to a failure to limit the discretion of State officials conducting the search - Supervisor Erma Rodriguez.  *Serpos vs. Schmidt*, 1987.

**Answer:**     Defendants deny the allegations of Paragraph 18.  Answering further,

Defendants searched for ti(Serpos /10 Schmidt) in the SCT, CTA, DCT, and ALLSTATES

databases of Westlaw and did not find a case matching Serpos v. Schmidt.


19.     Defendants Kersick and Smith violated my Fourth Amendment rights by entering my property and enforcing the local building codes without any authority to do so.  *Fitzgerald vs. Santoro*, 707 F 3d.

10

**Answer:**    Defendants deny the allegations of sentence 1.  Answering further

Defendants admit that the Court of Appeals held the warrantless search in

the case of <u>Fitzgerald v. Santoro</u>, 707 F.3d 725, 730-32 (7th Cir. 2013)

objectively reasonable and justified by the exigent circumstances involved

in that case.


20.    Warrantless inspections of private property by municipal administrative officials without proper consent may be unconstitutional.  *Montville vs. Lewis.*

**Answer:**    Defendants admit that warrantless inspections of private property by

municipal administrative officials without proper consent may be

unconstitutional, but deny that the inspections at issue in this case were

done without proper consent or were otherwise unconstituional.

Defendants further admit that in <u>Montville v. Lewis</u>, 87 F.3d 900 (7th Cir.

1996) the Seventh Circuit found that municipal inspectors should receive

qualified immunity because the law governing the permissible scope of

warrantless administrative searches was not well-established.


21.    *Doe v. Heck*, 327 F 3d 492, 509.  The amendment's prohibition against unreasonable searches and seizures protects against warrantless intrusions during civil as well as criminal investigations by the government.  (*Mapp vs. Ohio*).

**Answer:**    Defemdants admit that Paragraph 21 accurately quotes language from the

opinion in <u>Doe v. Heck</u>, 327 F.3d 492, 509 (7th Cir. 2003).   Defendants

deny the remaining allegations of Paragraph 21.

22.     As a direct and proximate result of defendant's action, plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injurious damages and losses.  I am currently been seen at the Jessie Brown VA Medical Center.

**Answer:**     Defendants deny the allegations of Paragraph 22.

23.     Defendant made or caused to be made the decision to target plaintiff, thereby creating an unlawful, unreasonable search and seizure.  Defendant engaged in the conduct described by this complaint wilfully, maliciously. in bad faith, and in reckless disregard of plaintiff's federally protected constitutional rights.

**Answer:**     Defendants deny the allegations of Paragraph 23.

24.     Municipal policy that is not itself unconstitutional but merely permits or tolerates unconstitutional acts by City employees can be the basis for municipal liability under 1983. *Fiacco vs. Rensselaer*, (1986).

**Answer:**     Defendants admit that Paragraph 24 is an accurate transcription of a

portion of the opinion of the United States Court of Appeals for the

Second Circuit in Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2nd Cir.

1986) and deny the remaining allegations of Paragraph 24.

25.     The Supreme Court rejected a construction of 1983 that would accord municipalities a qualified immunity from their good-faith constitutional violations. *Id* at 657-100.  Sct. at 1418, and held that municipalities have no immunity from damages or liability flowing from their constitutional violations.  *Owens vs. City of Independence*.

**Answer:**     Defendants admit that in Owens v. City of Independence, 448 U.S. 622,

657 (1980) held that municipalities do not enjoy immunity from damages

liability flowing from their own constitutional violations.  Answering

further, Defendants state that Defendant City has not asserted any claim of

immunity, although Individual Defendants Smith and Kersick have asserted, and continue to assert, that they have qualified immunity concerning the allegations of the Complaint and that judgment should be entered in their favor on those grounds.

26.     The City's policy is the moving force behind the constitutional deprivations. *Teesdale*, 690 F3d at 833-34.

**Answer:**     Defendants admit that in <u>Teesdale v. City of Chicago</u>, 690 F.3d 829, 833-34 (7th Cir. 2012), the United States Court of Appeals stated, " To establish municipal liability, a plaintiff must show the existence of an "official policy" or other governmental custom that not only causes but is the "moving force" behind the deprivation of constitutional rights." and further stated, "A plaintiff can establish an official policy through "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Answering further, Defendants deny the remaining allegations of Paragraph 26.

27.     The City has a custom or policy of targeting African-American homeowners for building code inspections and violations. *Awalt vs. Marketti*, No. 11 C 6142, 2012 WL 1161500 at 11 ND 111, April 9, 2012, but not white communities for building or similar inspections, and that my home is one of the targeted.

**Answer:**     Defendants deny the allegations of Paragraph 27.  Answering further,

Defendants note that <u>Awalt v. Marketti</u> involves the death of an prisoner in

the custody of the Grundy County sheriff and allegations of inadequate

medical care while incarcerated in the Grundy County jail and does not

deal either with administrative inspections of buildings for compliance

with a municipal building code or with allegations of racial discrimination

in general or allegations of racial discrimination with regard to housing or

housing inspections.

28.     As evidence of its being targeted, the building inspectors charged me with non-code violations; yet the City does not target white homeowners or similar homeowners for minor violations.  Cockroaches.

**Answer:**     Defendants deny the allegations of Paragraph 28.  Answering further,

Defendants state that the administrative complaints involving Plaintiff and

the building/property only allege violations of the Municipal Code of

Chicago.

29.     Ask the defendant to look at administrative complaint and summons that reads Group Target.

**Answer:**     Defendants incorporate by reference their answer to Paragraph 5 as if was

fully set forth here.  Defendants deny the remaining allegations of

Paragraph 29.

30.     The action of the City and individual defendants caused the plaintiff to suffer a

14

deprivation of his constitutional rights as decided and the plaintiff is entitled to and here by demands an award of nominal damages, compensating damages as established by policy at trial, and exemplary damages as permitted by law resulting from the deliberate and objectively unreasonable violations of his constitutional rights.

**Answer:**        Defendants deny the allegations of Paragraph 30.

31.    Plaintiff alleges that the City's policy was the moving force behind his constitutional deprivation.

**Answer:**        Defendants deny the allegations of Paragraph 31.

WHEREFORE, Plaintiff respectfully requests that the court enter judgment in his favor and against each of the defendants and award him all relief allowed by law, including but not limited to, any further ruling that this court deems just and proper and any other relief as allowed by law.

**Answer:**        Defendants deny that they violated Plaintiff's constitutional rights in any

way and that judgment should be granted in Defendants' favor along with

such other relief, including but not limited to costs and fees, as the Court

may deem just and proper.

Respectfully submitted,
STEPHEN PATTON
Corporation Counsel
City of Chicago

By:      ____/s/ Tom Forgue _____
One of Its Attorneys

Mardell Nereim
Tom Forgue
Constitutional & Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois  60602
(312) 744-6975/ (312) 742-0307
Attorney No. 90909

15