## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

JOSEPH RUTLEDGE,　　　　　　　　　）
　　　　Plaintiff,　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　）　　Case Number: 13 CV 00870
　　vs.　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　）　　13Co870
CITY OF CHICAGO, ET AL.,　　　　　　）
　　　　Defendants.　　　　　　　　　　）

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and for the reasons set forth in the attached memorandum, Plaintiff hereby moves this court for the entry of summary judgment.

### INTRODUCTION

Pursuant to the court's June 13, 2013 minute order granting, in part, and denying, in part, Defendants' first motion to dismiss, only two claims remain in the lawsuit: namely, *pro se* Plaintiff's equal protection claim based on racial discrimination and Fourth Amendment claim against individual City of Chicago building inspectors.

In the June 13, 2013 minute order, the court granted Plaintiff leave to add the individual building inspectors as Defendants to this lawsuit, which Plaintiff did on June 29, 2013, by adding Defendants Vallie Smith and Don Kersick. The individual Defendants motioned the court to dismiss pursuant to Federal Rule of Civil Procedure 12(B)(6) or, in the alternative, motion for judgment on the pleading on the basis of qualified immunity under Rule 12©), to which the court denied Defendants' motion to dismiss Plaintiff's Fourth Amendment claim. The Defendants cannot establish the first step of qualified immunity. *Person v. Callahan,* 555. Therefore, the court denies Defendants' Rule 12©) motion based on qualified immunity.

Defendant City of Chicago presented another motion for partial reconsideration in regard to the court's June 13, 2013 minute order, denying the City's motion to dismiss *pro se* Plaintiff's equal protection claim brought pursuant to *Monell v. Depart of Social Services of the City of N.Y.,* 436 US 658, 98 S.Ct. 2018, 56 L. Ed 2D 611 (1978)

The Plaintiff is entitled to summary judgment when the evidence presents no genuine issue of material fact and he is entitled to judgment as a matter of law.

The Plaintiff is entitled to relief in this case because constitutional violations arose from execution of established policy of the City. *Canton v. Harris.*

*Plaintiff alleges that City knew or should have known of patterns of constitutionally offensive acts by officers that it employs and that City failed to properly supervise, train, or discipline officers or take reasonable steps t-remedy alleged*

1

. *misconduct.* _____

The City's policy makers knew or should have known that the illegal hiring and promotion of Erma Rodriguez would lead to a constitutional violation. The manner in which the City trained shows deliberate indifference to Plaintiff's constitutional rights and those of other minorities.

The Defendants gave in to pressure of parties in the community. The officers have misused the limited consent as a license to conduct a general exploratory search, such unlawful action government officers or agents raises the issue of the overall voluntariness of the actual consent. *United States vs. Dichiasinte,* 445 F2d. Plaintiff directs you to City at 0055, the list of calls to aldermen, police, 18th Ward, in the response to documents, designated City 0053, City 0054-0055, City 0057.

Plaintiff is challenging established State procedure, without due process. *Logan vs. Zimmerman Brush Co.,* 455 US.

There is and was no authority of law, 42-USC 1983, based on the Fourth amendment: Plaintiff was subjected to unlawful search and deprived of liberty without probable cause.

These acts violated rights under the Fourth and Fourteenth Amendments under color of law and pursuant to official policies practices, and customs ● the City of Chicago on the basis of official policy and custom, and that the Defendants City of Chicago and Commissioner of Buildings are liable for the misconduct alleged.

The Defendants adopted and implemented the action for the purpose of discriminating against a class and myself on account of race (group target). *Rodriguez, 497 US at 188-189.*

There was governing precedent under similar circumstances that should have put Defendants on notice that their actions were plainly unlawful. There was a duty to inquire further when no identification was presented at either inspection. The Defendants did not and could not have any consent without properly knowing who the party was that let them into the house. Defendants produced the second part of a work order that was non-existent until discovery.

Plaintiff wishes to challenge the ~~scope of the~~ search performed. Don Kersick exceeded the scope of the search from an inoperable furnace to a home inspection when he did an inspection first of the house. Document #11, page 7 of 15, page ID #27, Ms. Lasley states that she did not call the City's 311 line to make a report of damages to the furnace or house – her signed statement.

Vallie Smith from a broken window.

## PLAINTIFF'S EQUAL PROTECTION ARGUMENT AND FOURTH AMENDMENT

The city of Chicago has a policy and practice of targeting certain individuals, based principally on their perceived race or ethnicity, performing inspections of homes that are targeted for frivolous or non-existing violations, and then subjecting them to

unreasonable searches when they have done nothing to warrant such treatment. Plaintiff seeks judicial redress for violations of his civil rights due to Defendants' policy and practice. Plaintiff seeks equitable relief so that people of color may enjoy a right to privacy in the City of Chicago without having to suffer the discriminatory treatment of government officials. (See State Farm estimate of flood damage. It was unreasonable to have code violations after a disaster.)

Decisions of the City's Department of Administrative hearings are public records under the State and Federal law, 50 ILCS 105/3.

It is well established that executive and agency determinations are subject to judicial notice. *Fornalik v. Perryman,* 223 F3d 523, 529; *Palay v. United States,* 349.

In the administrative complaint, the inspectors are listed as Erma Rodriguez and Marlene Hopkins, BL00069 and CN00054, Inspection No. 10748 (911).

Consent to the search was invalid because it is the fruit of an illegal investigation.

On the inspection of December 6, 2012, it lists no phone number for the supervisor. It violate Plaintiff's right to due process to contest violation. A municipality may, in certain circumstances, be held liable under 1983 for constitutional violations resulting from its failure to train its employees. PP. 489 US 385-392. *Canton vs. Harris.*

*Monsell vs. New York City, Department of Social Services,* 436 US 658, 436 US 694, that a city is not liable under 1983 unless a municipality "policy" or "custom" is the moving force behind the constitutional violation. The municipality made a "deliberate" or "conscious" choice in the failure to train its building inspectors, making this an actionable city policy. Where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the officers come into contact.

This deficiency in training has led to a major constitutional violation such as the hiring of a teenage for a building inspector's job (Andy Ryan) and Fourth Amendment violations and equal protection violations (Kaderbek).

Years before there were back-to-back disasters that killed 34 young people, the E2 nightclub stampede, and the Lincoln Park porch collapse, unmasked a shortage of building inspectors and underscored the importance of having ones who are supremely qualified and trained. The Sixth Circuit held that, where a Plaintiff proves that a municipality, acting recklessly, intentionally, or with gross negligence, has failed to train its officers resulting in a deprivation of constitutional rights that was substantially certain to happen. It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under 1983. *Springfield vs. Kibbe,* 480 US 257.

Plaintiff alleges that he was subjected to unreasonable searches in violation of the Fourth Amendment, which were the result of inadequate training, discipline, and supervision of inspectors. *Monell vs. New York City, Department of Social Services,* 436 US 659, 694 (1978). This deprivation occurred as a result of municipal policy,

Pembour vs. City of Cincinnati, 475 US 467, 579-480 (1986). Municipalities are liable under 1983 when execution of a government's policy or custom, Monell, 436 US, at 694.

1. McTigue vs. City of Chicago, 60 F3d 381; McNabala vs. Chicago Transit Authority, 10 F3d 501; Sornberger vs. City of Knoxville, IL, 434 F3d 1006.

Under the Fourth Amendment, evidence obtained subsequent to an illegal investigation is tainted by the illegality and should have been inadmissible. US vs. Bosse, 898.

Case 1:13 - CV -00870, document 22 – I filed 09-27-13 – page 6 of 21, page ID, 352861.

The Administrative Complaint Case Group Target Inspection Number 107 48 911.

## FOURTH AMENDMENT

Plaintiff is challenging the searches, Bumper vs.. North Carolina, 1968-391.

The Defendant has the burden of proving that the consent was freely and voluntarily given. The burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.

Where there is an illegal detention or illegal conduct on the part of the police, a consent will be found voluntary only if there is clear and convincing evidence that the consent was not the product of the illegal policy action; otherwise, the voluntariness of the consent must be established by a preponderance of the evidence.

Defendant's Amended Answer to Production of Documents and other interrogatories, page 3.

A.   Defendants state that they are unaware of any documents memorializing Yolanda Lasley's showing identification for either the inspections of 12.03.12 or 12.06.12, that are the subject of this lawsuit.

B,   Yolanda Lasley says she never signed any consent forms from any sources.

One issue is can a search be justified as lawful on the basis of consent when that consent has been given only after the official conducting the search has asserted that he possesses a warrant or work order, in this instance. Defendants' Second Amended Answers to Plaintiff's first set of interrogatories, page 7:

Q,   Were there documents identifying Yolanda Lasley or Yolanda Love?

A.   The City recently discovered the second page of the work order for the December 6, 2012 inspection by Defendant Kersick.

4

## POLICY

The City's policy for training its officers/supervisors (Erma Rodriguez) are inadequate and the City failed to instruct Defendants. The City failed to adequately train and supervise these officers, Vallie Smith and Don Kersick.

If Erma Rodriguez had been properly trained, this constitutional violation would not have occurred. _____ Erma was promoted to supervisor and chief illegally. She had spent only one year working in the field; to be promoted, the supervisor or inspector must have a minimum of six years in the field.

Erma Rodriguez was a co-conspirator in the hiring fraud involving the teenager Andy Ryan, with former Monardi̶n̶j; Deputy Commissioner, Christopher Kozicki. Andy Ryan's father is Tom Ryan, the Secretary Treasurer of Carpenters Local 13.

The selection to hire this teenager as a building inspector was made by a screening panel composed of two trusting underlings, Managing Deputy Commissioner Christopher Kozicki and Chief of the Central and West Districts, Erma Rodriguez.

Christopher Kozicki admits to fixing testing results for City job applications and he confessed that he helped the well-connected get inspector jobs in the Department of Buildings.

On the administrative complaint at City 0005, 12.06.12, it says "inspected by BL00069". This is Erma Rodriguez. Inspection No. 10748(911) and Supervisor ID CN0054 who is the Managing Deputy Marlene Hopkins.

Defendant City of Chicago admits that the administrative complaint and certain other documents in the administrative records concerning Plaintiff contain the notation "case group target" or order type target. Document #47, page 4 of 15.

Page 4 of Defendants' Amended Answers to Production of Documents and other interrogatories.

Plaintiff objects. Page 4, question 5. Defendant responded that Erma Rodriguez, head of the Department of Conservation for the City's Department of Buildings, did not inspect 7917 South Damen Avenue on either December 3 or December 6, 2012. Accordingly, there are no responsive documents. BL00069 is identified as Erma Rodriguez, a numeric identifier on the Hansen database/computer system.

Defendants also admit the administrative complaint and other documents explain BL00069 as inspected by Erma Rodriguez.

Page 3, question 4: Please produce all records from Hansen case Id 3530193. Defendants say the case ID number was simply the identifying index number in that computer system for a particular activity. Plaintiff asked what that particular activity was.

Marlene Hopkins has served as Managing Deputy Commissioner for the

Department of Buildings since 2007. As senior leader for the Department, Ms. Hopkins manages all hands on operational and administrative activities, ensuring that all departmental operations are carried out in compliance with local State and <u>Federal</u> regulations and laws. Ms. Hopkins routinely runs point on emergency response for the Department, including Mayor Emanuel's Vacant Building Initiative for <u>nine ~~policy~~ Police districts</u>

    <u>Plaintiff asserts</u> that he was targeted by the Deputy and Rodriguez. She is the <u>supervisor for Erma Rodriguez.</u> Marlene Hopkins, Managing Deputy Commissioner of the Department of Housing, according to the Defendant City of Chicago who would testify to the overall <u>residential inspection system</u> for compliance with relevant portion of the municipal code by the City. <u>CN00054</u> on the administrative document, see Group Target Inspection No. 10748(<u>911</u>).

    No. 18. List in detail any applications, granted favors, permits from the City, including having vouchers and any form of assistance from people who use the address of 7917 Damen Avenue in Chicago. Answering further, subject to the foregoing objection, it is possible that ~~having~~ assistance and vouchers were provided by one of the City's sister agencies, especially the Chicago Housing Authority (CHA) OR BY THE State or Federal government, but the City does not have records concerning ~~having~~ assistance. <u>Defendants' Second Amended Answers to Plaintiff's first set of interrogatories.</u>

    The consent to enter Plaintiff's house was involuntary and the consent was invalid because it was an illegal search – unreasonable under the Fourth Amendment and tainted.

    <u>Marlene Hopkins</u>, Managing Deputy Commissioner.

    Ms. Hopkins served as Assistant Director in the Department of Construction and Permits and held various positions in the Department of Aviation and Sewers and the <u>Chicago Housing Authority</u> where housing could have been promised. Marlene Hopkins has extensive experience with CHA.

    Respectfully submitted,

    JOSEPH RUTLEDGE

    By: _Joseph Rutledge_
       Joseph Rutledge
         773-448-9082

## STATEMENT OF THE ISSUES PRESENTED

The issues involved concern the legality of the searches and seizures made at plaintiff's home. On the administrative document, it reads <u>group target.</u> Defendants says it is a <u>typing error.</u>  <u>But it clearly singles out a class or group suspect.</u>

The issue is whether racial classification is subject to strict scrutiny and review.

In Judge O'Connor's reasoning, the three propositions derive from the basic principle that the constitution protects individuals, **not** groups.  Thus, it follows that all race-based classifications be subjected to detailed judicial inquiry to ensure that the personal right to equal protection of the laws has not been infringed.

The security of one's privacy against arbitrary intrusion by the police is basic to a free society, *Wolf v. Colorado*, 338 US 25, 27; government actions that classify persons by race, *Aderand Construction, Inc. V. Pena*, 515 US 200, 230, 115 Sct. 2097 132 LED 2d 158, 1995; or that are facially neutral but motivated by discriminatory racial purpose.

Plaintiff challenges the veracity of the administrative complaint (not the hearing).  False statements were included in the affidavit by the affiant knowingly and intentionally with reckless disregard for the truth.  And the false statement was necessary for the finding of probable cause for inspection.

<u>The inspections of 12.06.12 - 12.03.12.</u>

The inspectors and supervisors are listed as Erma Rodriguez and Deputy Marlene Hopkins.  The defendants and City say they were not in the field on these days and did not do the inspections, BL00069 and CN00054, on December 6, 2012.  If they were not in the field on this days and did not do the inspections, the administrative complaint is void and plaintiff's Fourth, Fifth, and Fourteenth Amendments rights were violated under clearly established laws.  42 USC 1983.  *Franks v. Delaware.*



**TABLE OF CONTENTS**

1. TABLE OF AUTHORITIES

   Motion for Summary Judgment

   Introduction

   Statement of Case

   Statement of Fact
       Fourth Amendment

   Argument
       Equal Protection

   A.    The Defendants' use of an Administrative Search as a pretext for a warrantless law enforcement search. Violated the Fourth Amendment.

   B.    The Administrative Search was unconstitutional in its scope.

   C.    The search violated plaintiff's clearly-established rights.

Exhibits

1. Interrogatories

2. Work Orders

3. Defendants' Statement of Change letter.

4. Administrative Complaint

5. State form letter

6. Police calls Alderman

2 C   c

## CONTROLLING AUTHORITIES
## FOURTH AMENDMENT

*United States v. Bossee*

*Schneckloth v. Bustamonte*

*State v. Myers*

*State v. Rutherford* 1994. 93 Ohio App. 3d 586

*State v. Anderson* 1995. 100 Ohio App. 3d

*Bumper v. North Carolina* 1968. 391 US 543

*Warren v. Hayden,* 387 US 394

*Comara v. Municipal,* 387 US 523

*State v. Roaden* (1994) 98 Ohio App.

Document 47, page 2 of 15, page ID #337

*Franks v. Delaware, supra* 155-56

*Johnson v. United States,* 333 US

*Jones v. United States,* 362 US, page 438, US 168

*Mapp v. Ohio,* 367 US 670

*Wolf v. Colorado,* 338 US 25, 338 US 42 (1949)

3  D

## STATES THAT PERMIT VERACITY CHALLENGES

Alabama: *Alabama v. McConnell,* 48 Ala. App.

Alaska: Davenport v. State, 515P

Arizona: *State v. Payne* 25, Ariz App.

　　　　*State v. Pike,* 113 Arizona

Iowa: *State v. Boyd*

## EQUAL PROTECTION AUTHORITIES
## FOURTH AMENDMENT

*Abcarian v. McDonald*, 617 F3d 931, 938

*Awalt v. Marketti*, No. 11C6142, 2012, WL 1161500

*Labella Winnetka v. Village of Winnetka*, 628 F3d 937, 941-42 (7th Cir. 2010) citing *Enquist v. Oregon Department of Agriculture*, 553 US 591-601-02, 128 SCt 2146, 170 K (2008)

*City of Canton v. Harris*, 489 US 378, 388

*Monell v. US*, 436

*United State v. Sousi*, 29 F3d 565, 568

*Johnson*, 994 F2d at 743

*Abel v. United States*, 362 US 217, 225-230

*Wolf v. Colorado*, 338 US 25, 27

*Aderand Construction, Inc. V. Pena*, 515 US 200, 230, 115

*Washington v. Davis*, 426 US 229, 96 Sct.

*Franks v. Delaware*, 438 US

*Cates v. State*, 120 SW3d 352, 357, Tex. Crim. App.

*Jones V. State*, 907

*Walter v. United States*, 447 US 649

*Goth v. Ramirez*, 540 - US 541

391 - US 543-549

Document 47, page 2 of 15, page ID 337

## PRETEXTUAL ADMINISTRATIVE SEARCHES

1. *See v. City of Seattle,* 387 US 541

2. *Katz v. United States,* 389 US 347

   *New York v. Burger,* 482 US 691

   *Colonnade Catering Corp. V. US,* 397 US 72

   *Burger,* 482 US at 702-03

   *US v. Biswell,* 406 US 311, 315

   *Warden v. Hayden,* 387 US 294

   *Kremen v. United States,* 353 US 346

   *Michigan v. Clifford, 464 US 287*

   *Burger,* 482 US at 724-25

   *Abel v. United States,* 362 US 217 (1960)

   568 F3d 181 (5th Cir.) LA (2009)

   *United States v. Thomas,* 973 F3d 1152, 1155-1156

   *City of Indianapolis v. Edmund,* 382 F3d 529

   *Collins v. Ainsworth,* 382 F3d 529, 538-539

## JURISDICTION

The court has concurrent jurisdiction over plaintiff's claims for violation of civil rights pursuant to 42 USC 1983 and 1985 and raises federal questions applicable to the states under the Fourth and Fourteenth Amendments of the United States Constitution and under the constitutional and common laws of the State of Illinois.

The described deprivation of the Plaintiff's constitutional rights were caused by implementation of customs, policies or official acts of defendants, Erma Rodriguez, Deputy Marlene Hopkins, Vallie Smith, Don Kersick, and the City of Chicago.  To wit: the failure of said defendants to adequately train, supervise, and discipline its inspectors regarding the circumstances which constitute probably cause or reasonable suspicion for search and seizure, and the failure of said defendants to adequately train, supervise, and discipline its officers regarding unconstitutional racial profiling of homes.  The allegations have support after a reasonable opportunity in discovery.  Defendant City had constructive or actual knowledge of the above-mentioned policy and/or custom which posed a pervasive and unreasonable risk of constitutional injury.

Despite this knowledge, their responses were so inadequate as to show a deliberate indifference to or to wit authorization of the offensive policy and/or customs and said inaction was the direct and proximate cause of the plaintiff's injuries.  Defendants, acting under color of law and in concert with one another, engaged in intentional race discrimination.  In so doing, defendants have caused the plaintiff to suffer deprivations of his fundamental rights to liberty and to be free from unlawful searches and seizures on account of his race.  These actions violated plaintiff's rights to equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States, it counterpart, the Illinois Constitution, and 42 USC 1983.  The acts of the defendants caused injury to plaintiff.  They were intentional and done in knowing violation of plaintiff's legal and constitutional rights, without good faith, and with reckless disregard and/or callous indifference to plaintiff's civil rights.

1.      Plaintiff alleges that he was subjected to unreasonable searches in violation of the Fourth Amendment.  There were two disproportionate inspections in one week. *Monell v. New York City,* 436 US 658, 694 (1978).

The plaintiff was subjected to outrageous conduct intentionally imposed upon him by the defendants to humiliate and embarrass him.  As a result, the plaintiff suffered shock, embarrassment, and severe mental distress.

Defendant City of Chicago is a political subdivision of the State of Illinois and, as a recipient of federal funds, is required to conduct its activities in a racially non-discriminatory manner, pursuant to Title VI of the Civil Rights Acts of 1964,
        for compensatory damages, in an amount to be determined at trial, against the defendants;
        for punitive damages in an amount to be determined at trial, against the individual defendants;
        for cost and attorneys' fees incurred in pursuing this action, as provided in 42 USC 1988;
        for such other and further relief as the court deems just and proper.

        Plaintiff demands a trial by jury.

2.    , For a Declaratory Judgment that the defendants have engaged in racial discrimination and have denied plaintiff the equal protection of the law with respect to the unlawful search of the plaintiff's property in violation f the Fourteenth Amendment to the Constitution of the United States and the Fourth amendment..

For a Declaratory Judgment that defendants' search of plaintiff without probable cause was unreasonable to believe a crime or violation had been committed or was imminent, violated the Fourth Amendment's guarantee against unreasonable searches and seizures, the Fourteenth Amendment's protection from unlawful, race-based law enforcement activity, and their counterparts in the Illinois Constitution.

For a Declaratory Judgment that the defendants have engaged in racial discrimination, with respect to the seizure and search of plaintiff described herein violation of Title VI of the Civil Rights Acts of 1964.

The plaintiff states a claim of unreasonable search and seizure under the Fourth Amendment.

A.    The defendants' use of an administrative search as a pretext for a warrantless law enforcement's search violated the Fourth Amendment.

B.    The administrative search was unconstitutional in its scope. Vallie smith and Don Kersick are both City employees. The search violated plaintiff's clearly established rights.

C.    As the court has explained, the administrative search process may not be used to unjustifiably <u>target individuals</u> or businesses toward which the police have <u>personal animus.</u>

WHEREFORE, plaintiff requests monetary damages and injunctive and/or other equitable relief against defendants and each of them as follows:  for a Declaratory Judgment that the official policy and/or custom of the defendant City of Chicago, which City of Chicago inspectors/officers, at their individual discretion and without reasonable articulate suspicions of criminal activity - probable cause - to seize persons for the purpose of conducting frivolous searches, is unconstitutional on its face and as applied, has resulted in unjustified code violations and searches, including those of the plaintiff, in violation of the Fourth Amendment and the Fourteenth Amendment to the Constitution of the United States and their counterparts in the Illinois Constitution.

7A

. The Fourth Amendment prohibition on using Administrative Searches as pretext for law enforcement searches is a clearly-established standard that should be known by any objectively reasonable officer.

Even if he believed he was properly operating to enforce regulations, a reasonable officer would know that the scope and force of such a search were limited by the administrative scheme. *Colonnade Catering Corp.,* 397 US at 528; *Steagold v. United States,* 451 US 204 (1981); *Peyton v. New York,* 445, US 573; *Ybarra v. Illinois,* 444 US 85 (1979).

The basic standard governing administrative searches condemns the baseless violation of a single establishment for grossly disproportionate intrusions, and that the cases upholding warrantless administrative searches clearly establish that these rules require certainty, regularity and neutrality in the conduct of the searches. 848 F2d at 446-47.

An administrative ordinance may not be used as a pretext to search for suspected criminal activity. If the primary object of the search is to gather evidence of criminal activity, a criminal search warrant may be obtained only on a showing of probable cause to believe that relevant evidence will be found in the place to be searched.

In addressing the importance of the issue, the United States Supreme Court has stated in the law of Administrative Searches, one principle emerges with unusual clarity and unanimous acceptance: the government may not use an administrative inspection scheme to search for criminal violations.

*Michigan v. Clifford,* 464 US 287

*Burger* - 482 *supra*

*Michigan v. Tyler,* 436 US at 504-508

*Marshall v. Barlow, Inc.,* 436 US 307 (1918)

8

The manner in which the seizure and search were conducted is, of course, as vital a part of the inquiry as whether they were warranted at all. The Fourth Amendment proceeds as much by limitations upon the scope of governmental action as by imposing preconditions upon its initiations. *Terry v. Ohio,* 392 US, 1, 28-29 (1968).

A properly authorized official search is limited by the particular terms of its authorization. *Walter v. United States,* 447, 649, 657 US (1980).

The officer conducting the search MUST ensure that the search is valid and appropriate in both its foundation and its scope. *Groh v. Ramirez,* 540 US 551, 563 (2004).

The administrative search was unconstitutional in its scope.

The Ninth Circuit Court of Appeals reiterated that a known government agent who misrepresents his true purpose for entry cannot rely on consent to justify that entry. *United v. Bossee,* 898 F2d.

*Comara v. Municipal Court (1967),* 387 US 523. There is no blanket exception to the warrant requirement of the Fourth Amendment for warrantless Administrative Searches of personal residences for purposes of building code enforcement. While warrants are required, the probable cause for issuance does not focus on an individual residence, but rather on appraisal of conditions in the area as a whole.

*State v. Myers* (1997). Consent may not be on a written waiver based after the search.

The search violated plaintiff's clearly-established rights. To find a clearly-established right, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton,* 483 US 635, 640 (1987). However, officials can still be on notice that their conduct violates established law even in novel factual circumstances. *Hope v. Pelzer,* 536 US 730, 741 (2002).

## EQUAL PROTECTION

*Washington v. Davis,* 426 US 229, 96 Sct. Are subject to strict judicial scrutiny. Plaintiff asserts that this was a targeted (group) search that was submitted to the administrative hearing from the Chicago Police, <u>as evidence submitted</u> the list of calls to alderman, police, and 911 gang activity and other episodes that occurred at plaintiff's address. The two inspections on December 3 and December 6, 2012 were inspection No. 10748 <u>911</u>.

We begin with the December 6 inspection that reads "inspected by BL00069." (Supervisor Erma Rodriguez and Deputy Marlene Hopkins). Defendant City cannot say this is a <u>typographical error</u>.

The false information was used for probable cause , *Jones v. State,* 907. Plaintiff challenges the validity of the search on the basis of untruthfulness in the administrative complaint. Under *Franks v. Delaware,* 458 US; *Cates v. State,* 120 SW3d 352, 357 (Tex. Crim. App. 2003).

The officer conducting a search must ensure that the search is valid and appropriate in both its foundation and scope, *Walter v. United States,* 447 US 649.

*Goth v. Ramirez,* 540 - US 541. Plaintiff alleges racial animus <u>in the inspection of his home</u> and the inspection of homes in African-American communities, as opposed to similar ~~communities~~. *City of Canton v. Harris,* 489 US 378, 388.

The inspectors were following a policy that is based on racial considerations and targeted properties, which violates the US Constitution, *Monell US* 436. The defendants permit and encourage this policy. The City has a failure to train, discipline and supervise its agents that carry out this policy and practice. No identification is required in third-party inspections. *United State v. Sousi,* 29 F3d 565, 568 (10 Dir. 1994). "Whether an administrative search is a pretext for a criminal investigation is a factual question" subject to review for clear error, *Johnson v. United States,* 944 F2d at 743; *Abel v. United States,* 362 US 217, 225-230 (1960).

## EQUAL PROTECTION

The disparate treatment of plaintiff begins at the very first state of the administrative complaint that reads <u>group target.</u> The investigations of code enforcement agents disproportionately target minorities. Plaintiff had two inspections on the dates of December 3, 2012 and December 6, 2012, both disproportionate. Too often, the police employ tactics against minorities that simply <u>shock the conscience.</u> <u>Next, the inspection No. 10748 (911),</u> plaintiff asserts that this was a <u>911</u> police inspection. <u>Defendants' Amended Answer to Production of documents and other Interrogatories.</u> "Non-target cases" was simply an administrative designation.

The defendant City cannot say that group target is a bald assertion because the documents identify that the defendants acceded to pressure from the community who had discriminatory animus toward young Black men in the targeted area. <u>This is an admission from defendants.</u>

## CONSENT ARGUMENT

Consent may not be on a written waiver based after the search, *State v. Myers (1997),* Defendant Don Kersick made an inspection of the home and then the furnace. A warrant or work order after the inspection is not valid consent.

Plaintiff challenges the validity of the searchers and work order. If the work order specified only the furnace, that is the only place that can be searched. The Ninth Circuit Court of Appeals reiterated that a known government agent who misrepresents his true purpose for entry cannot rely on consent to justify that entry. *United States v. Borsee.*

The defendant City, only after discovery. Vallie Smith produced the second page of the work order. Defendant Don Kersick exceeded the scope of the search. Search of the entire house violated the Fourth, Fifth, and Fourteenth Amendments. *Schneckloth v. Bustamonte*, US 218, 213. *The defendant has the burden of showing whether consent to the search is voluntary, depending on the totality of the circumstances.*

Consent may not be coerced by explicit or implicit means or by implied or covert force. *State v. Rutherford* 1994. 93 Ohio App. 3d 586. When consent is obtained after illegal policy activity, the unlawful police action presumptively taints and renders involuntary any consent to search. *State v. Anderson* (1995) 100 Ohio App. 3d 368.

*Bumper v. North Carolina* (1968). 391 US 543. A search cannot be justified on the basis of consent where the authorities falsely claim to have a warrant and are allowed to enter premises. Defendant has the burden of proving that the consent was, in fact, freely and voluntarily given.

Vallie Smith and Don Kersick's exceeding the scope of the search was an unlawful search or seizure within the Fourth Amendment.

The government must also prove that a search conducted by officers was within the consent given. Evidence obtained by the government that exceeded the scope of an individual's consent to search must be excluded at trial unless another reason existed for the search.

A window and furnace. Vallie Smith started on the outside of plaintiff's house and continued from outside the basement through the house and upstairs to my bedroom. A search which is reasonable at its inception may violate the Fourth amendment by virtue of its intolerable intensity and scope. *Warren v. Hayden,* 387 US 394

*Comara v. Municipal,* 387 US 523 (1967). Administrative searches generally require warrants. Neither defendant had one.

There are no written consent forms for the State to meet its burden of showing by a preponderance of the evidence that the search was consensual. In response to all interrogatories and questions, defendants Yolanda Lasley signed no such papers nor had any identification.

*State v. Roaden* (1994) 98 Ohio App 3d 500. A pretextual intrusion upon private property cannot be used to lift finding items in plain view. Dominion and control over plaintiff's house was a seizure.

*Akron v. Harris,* 1994 93 Ohio App. 3d 378. Consent to enter premises may be separate issue from consent to search. There is a distinction between consent to enter into a residence and consent to a search of the residence.

Plaintiff asserts that this was a pretextual administrative search that violates the Fourth Amendment. Defendant's first response was that Vallie Smith only inspected the structure of the house, document 47, page 2 of 15, page ID No. 337.

# **EXHIBITS**

1. ~~Scan~~

Administrative complaint)
Femee disaster 4116

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

JOSEPH RUTLEDGE,             )
      Plaintiff,             )   Case Number: 13 CV 00870
                   )
    vs.             )   Judge Amy J. St. Eve
                   )
CITY OF CHICAGO, VALLIE SMITH             )   Magistrate Judge Maria Valdez
and DON KERSICK,             )
      Defendants.             )

## DEFENDANTS' SECOND AMENDED ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendants City of Chicago, Vallie Smith, and Donald Kersick, by and through their attorney, Stephen R. Patton, Corporation Counsel, responds to Plaintiff's First Set of Interrogatories.

### INTERROGATORIES

Page ID No. 337
Document 47, Page 2 of 15

11. The City further responds that Defendants Smith and Kersick relied upon their observation from outside the property/building and on consent for the inspection inside the building - Document 47, pages 2 of 15. Defendant City first says Vallie Smith only inspected the outside of the property. The City responds that neither Defendant Smith nor Defendant Kersick had an Administrative Warrant.

15. Were there documents signed by Yolanda Lasley? The City recently discovered the second page to the Work Order for the December 6, 2012 inspection by Kersick.

No. 20.3
Marlene Hopkins, Managing Deputy Commissioner of the Department of Housing

A warrant or work order after the inspection is not valid consent. There is no written consent form showing by a preponderance of the evidence that the search was consensual.

Case: 1:13-cv-00870 Document #: 22-2 Filed: 09/27/13 Page 23 of 31 PageID #:433

# Service Request Work Order

Inspec Date: 11/06/2011    Priority: EMER    **BUILDING VIOLATON**

Assigned Staff: VALLIE SMITH

Dist: CN_S  CA: 71    Ward: 18    #1075928    Cell Dttm: 6/11/2012  12:00:00AM

Rpt 12/11/2012  3:51:04PM

7917 S DAMEN AVE CHICAGO, IL 60620

| Associated Buildings & Ranges | # of Units | Annual Y/N |
|---|---|---|
| 619096  7917 S DAMEN AVE | 0 | N (na) |

**Description:** WINDOWS ARE BUSTED OUTS OF THE HOME - NEIGHBOR - 7917 S. DAMEN

## Flex/Intake

Precise Address-floor or Unit#: 7917 S. Damen

Actual Problem being encountered: windows are busted outs of the home

Are you a tenant, neighbor, or other: Neighbor

concerned citizen:

Has owner been notified: No

Is this an owner occupied property: No

Is this a CHA property: Yes

Are occupants, visitors, or passerby in: Yes

danger:

## Contacts

| Capacity | Primary | Contact Name | Phone, Email |
|---|---|---|---|
| OWNER | N | ZZ | Day: 000-000-0000 |

## Results:   Inspection Date: 12/3/2012  11:51:39AM

1. Violation: CN104015    REPLCE WINDOW PANES, PLEXGLAS
   Loc: OTHER:
   Description: Panes at north and west broken.

2. Violation: CN140016    DWELLING CLEAN AND SANITARY
   Loc: OTHER:
   Description: Walls very dirty, in unsanitary condition.

3. Violation: CN071024    REPAIR STOOP
   Loc: OTHER:
   Description: North stoop steps missing.

4. Violation: CN076044    REPAIR DOWNSPOUT
   Loc: OTHER:
   Description: North downspout missing.

5. Violation: CN015012    NO KEY TO USE EXIT DOOR
   Loc: OTHER:
   Description: Doors double key locks.

6. Violation: CN194029    PROVIDE
   Loc: OTHER:
   Description: Tenant do not have key to front double key lock on door. sec.07-28-060

7. Violation: CN197019    INSTALL SMOKE DETECTORS
   Loc: OTHER:
   Description: Smoke detector missing.

8. Violation: CN197087    CARB MONOX DETECT IN RESID
   Loc: OTHER:
   Description: Missing carbon monoxide detector.

9. Violation: CN136016    ROACHES
   Loc: OTHER:
   Description: Roaches thru-out.

10. Violation: EL0023    INSTALL COVERS
    Loc: OTHER:
    Description: Outlet missing covers.

I VALLIE SMITH , an employee of the City of Chicago's Department of Buildings, certify that I have conducted an inspection of the above referenced premises on the date indicated. I further certify that I have observed the alleged building code violations cited and believe that the violation as set forth in this instrument are true and correct.

42

Inspection No: 121058627

## Service Request Work Order

Call Dttm: 6/11/2012 12:00:00AM

Assigned Staff: **VALLIE SMITH**    Priority: **EMER**    **BUILDING VIOLATON**

Rpt: 12/11/2012 3:51:04PM

Dist: CN_S  CA: 71    Ward: 18

7917 S DAMEN AVE CHICAGO, IL 60620

| 11. | Violation: CN073044 | REPAIR EXTERIOR DOOR HARDWARE |
| | Loc: **OTHER:** | |
| | Description: **North door broken knob.** | |

Comments:

Result: **PROCESSED FOR HEARING**

*3 A*

VALLIE SMITH , an employee of the City of Chicago's Department of Buildings, certify that I have conducted an inspection of the above referenced premises on the date icated. I further certify that I have observed the alleged building code violations cited and believe that the violation as set forth in this instrument are true and correct

43



DEPARTMENT OF LAW
CITY OF CHICAGO

**BY FIRST CLASS MAIL**

May 23, 2014

Joseph Rutledge
8632 South Honore Street
Chicago, Illinois 60620

     Re:    **Rutledge v. City**
             **No. 13 Cv 00870 (N.D. Ill.)**

Dear Mr. Rutledge:

    Enclosed with this letter are Defendants' Second Amended Answers to Production of Documents and Other Interrogatories, Defendants' Second Amended Answers to Plaintiff's First Set of Interrogatories. The amended portion of the answers are clearly set forth as such. There are no changes to Defendants' Response to your Request to Admit or to Defendants' Amended Production of Documents, previously sent to you.

    Per our discussion of today, in the Second Amended Answers, the City changed certain designations from the Department of Housing to the Department of Buildings. These were typographical errors and do not reflect any change in either the substance of the answer or in the underlying facts. In addition, the City amended its answer to Item Number 1a. of the Production of Documents and Other Interrogatories. The City added information concerning the Group "Target" designation. We direct your attention to this amended answer.

    We will continue our discussion concerning your discovery answers by telephone on Tuesday, May 27 at 1030 a.m. at (773) 445-9083. If you cannot make this date, time, or telephone number, please call me right away at (312) 742-0307 so we can re-schedule. Again, our goal in this discussion is simply to understand your responses and your claims so that we can continue forward on this matter as necessary.

                     Sincerely yours,

                     Tom Forgue
                     Assistant Corporation Counsel

Enclosures



4 A

# City of Chicago

Department of Buildings
Michael Merchant, Commissioner
120 North Racine Avenue
Chicago, IL 60607

Address
7917 - 7917 S DAMEN AVE CHICAGO IL 60620-

Dept of Buildings NOV #    513S0352193
Case Group    TARGET

JOSEPH D RUTLEDGE
JOSEPH D RUTLEDGE

7917 S. DAMEN AVE  CHICAGO IL 60620
8632 S. HONORE ST  CHICAGO IL 60620

## Administrative Complaint    *SAME on service work order*

Date of Notice 01/04/2013

YOU ARE HEREBY NOTIFIED THAT THE DEPARTMENT OF BUILDINGS HAS CITED THE ABOVE PROPERTY FOR ALLEGED VIOLATION(S) OF THE CHICAGO MUNICIPAL CODE. THE ALLEGED VIOLATIONS COULD BE SERIOUS AND THEREFORE MUST BE IMMEDIATELY CORRECTED.

THE DEPARTMENT CONSIDERS SUCH ALLEGED VIOLATIONS AS CONTINUING ON EACH SUCCEEDING DAY AFTER THE INSPECTION DATE, UNTIL EVIDENCE HAS BEEN BROUGHT TO THE DEPARTMENT SHOWING THAT SUCH VIOLATIONS HAVE BEEN PROPERLY CORRECTED, PURSUANT TO SATISFACTORY PLANS AND PERMITS, WHEN APPLICABLE.

IF YOU HAVE ANY QUESTIONS REGARDING THESE VIOLATIONS, PLEASE FEEL FREE TO CALL THE AREA SUPERVISOR BETWEEN 9:30 AM AND 11:30 AM, AT THE PHONE NUMBER LISTED BELOW.

Inspection Number    10739281

| Date of Inspection | Inspected By | | Supervisor ID | Supervisor Phone | Recommendation | CA | Bureau |
|---|---|---|---|---|---|---|---|
| 12/3/2012 | BL00812 | | BL00690 | (312)743-3517 | AH | 71 | CONSERVATION |

That on the inspection date and on each succeeding day thereafter and on numerous other occasions, the respondent(s) had an interest in the property as defined by 2-14-151 and failed to comply with the Municipal Code of the City of Chicago as follows:

1    CN104015

Replace broken, missing or defective window panes. (13-196-550 A)
PANES AT NORTH AND WEST BROKEN.

Location:    OTHER  :  :

2    CN140016    SEQ #: 001

Keep premises clean, sanitary, and safe. (13-196-620 A, 13-196-630)
WALLS VERY DIRTY, IN UNSANITARY CONDITION.

Location:    OTHER  :  :

3    CN071024    SEQ #: 002

Failed to maintain stoop in safe condition and sound repair. (13-196-570, 13-196-641)
NORTH STOOP STEPS MISSING.

Location:    OTHER  :  :

4    CN076044    SEQ #: 003

Failed to maintain roof downspouts in good repair and working condition. (13-196-590, 13-196-630(b), 13-196-641, 18-29-1101, 18-29-1105, 18-29-1106)
NORTH DOWNSPOUT MISSING.

Location:    OTHER  :  :

SEQ #: 004

CITY
0032

S.A



Hansen Case ID: 352861

**City of Chicago**
**Department of Buildings**
Michael Merchant, Commissioner
120 North Racine Avenue
Chicago, IL 60607

Address:
**7917 - 7917 S DAMEN AVE CHICAGO IL 60620-**
**Dept of Buildings NOV #** 513HS352861
**Case Group** TARGET

JOSEPH D RUTLEDGE
JOSEPH D RUTLEDGE

7917 S. DAMEN AVE CHICAGO IL 60620
8632 S. HONORE ST CHICAGO IL 60620

## Administrative Complaint

Date of Notice 01/10/2013

YOU ARE HEREBY NOTIFIED THAT THE DEPARTMENT OF BUILDINGS HAS CITED THE ABOVE PROPERTY FOR ALLEGED VIOLATION(S) OF THE CHICAGO MUNICIPAL CODE. THE ALLEGED VIOLATIONS COULD BE SERIOUS AND THEREFORE MUST BE IMMEDIATELY CORRECTED.

THE DEPARTMENT CONSIDERS SUCH ALLEGED VIOLATIONS AS CONTINUING ON EACH SUCCEEDING DAY AFTER THE INSPECTION DATE, UNTIL EVIDENCE HAS BEEN BROUGHT TO THE DEPARTMENT SHOWING THAT SUCH VIOLATIONS HAVE BEEN PROPERLY CORRECTED, PURSUANT TO SATISFACTORY PLANS AND PERMITS, WHEN APPLICABLE.

IF YOU HAVE ANY QUESTIONS REGARDING THESE VIOLATIONS, PLEASE FEEL FREE TO CALL THE AREA SUPERVISOR BETWEEN 9:30 AM AND 11:30 AM, AT THE PHONE NUMBER LISTED BELOW.

Inspection Number    10748911

| Date of Inspection | Inspected By | | Supervisor ID | Supervisor Phone | Recommendation | CA | Bureau |
|---|---|---|---|---|---|---|---|
| 12/6/2012 | BL00069 | | CN00054 | | AH | 71 | CONSERVATION |

That on the inspection date and on each succeeding day thereafter and on numerous other occasions, the respondent(s) had an interest in the property as defined by 2-14-151 and failed to comply with the Municipal Code of the City of Chicago as follows:

1    CN132046

Provide and maintain every facility, piece of equipment, or utility in safe and sound working condition. (13-196-400, 13-196-440)

FURNACE OUT OF SERVICE AT TIME OF INSPECTION

Location:

2    CN046013                                                     SEQ #: 001

Stop using cooking or water heating device as heating device. (13-196-400)
USING COOKING STOVE AS HEATING DEVICE

Location:

SEQ #: 002

CITY
0005

State Farm STATE FARM FIRE AND CASUALTY COMPANY

GREAT LAKES

JPMORGAN CHASE BANK, NA    56-1544/441
COLUMBUS, OH    43240

GLZ FIRE PROCESS    CQ5.GSAP01PC    INSURED    RUTLEDGE, JOSEPH

CLAIM NO 13-402N-667
LOSS DATE 01-27-2014

DATE    08-04-2014
MM DD YYYY

******EXACTLY SEVEN THOUSAND TWO HUNDRED SIXTEEN AND 85/100 DOLLARS

$*****7,216.85

Pay to the
Order of:    JOSEPH RUTLEDGE & MIDFIRSTMIDLAND MORTGAGE CO ITS SUCCESSORS ANDOR
ASSIGNS

AUTHORIZED SIGNATURE

AUTHORIZED SIGNATURE

1 01 153702 J

SECURED DOCUMENT WATERMARK APPEARS ON BACK. HOLD AT 45° ANGLE FOR VIEWING

⑈'0⑈⑈⑈5370 2⑈'  ':04⑈⑈⑈544⑈3':  6 27⑈⑈ 8 268⑈'

VOID IF GREEN COLORED BACKGROUND IS MISSING

GREEN DROPOUT APPEARS ON FACE OF DOCUMENT

*Water Damage*
*4/16 Disaster*

7 A

Service Calls Search Results

# CLEAR Data Warehouse
## Service Calls Search
### For

Date Range = 01-JAN-2012 - 31-MAR-2014
District/Area of Service = Districts, CityWide
Beat of Service = All Beats
Occurrence Street # Between= 7917 and 7917
Occurrence Street Direction = S
Occurrence Street Name = DAMEN
District/Area of Occurrence = Districts, CityWide
Beat of Occurrence = All Beats
Report Date: 4/22/2014   Requested By= pc01733

| EVENT NO | RD NO | ENTRY DATE | CALLER NAME | OCCURRENCE ADDRESS | SERVICE ADDRESS | INITIAL DISPATCH | FINAL DISPATCH | INITIAL DISPOSITION | FINAL DISPOSITION | OCCURRENCE BEAT | SERVICE BEAT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12468l360 | | 26-MAR 2012 18:23 | CRICKET | 7917 S DAMEN AV | 7917 S DAMEN AV | | | | FILED EVENT | 0611 | 0611 |
| 12086141.48 | | 28-MAR 2012 18:30 | ARY WILLIAMS | 7917 S DAMEN AV | 7917 S DAMEN AV | EMS | EMS | | FILED EVENT | 0611 | 0611 |
| 121027815 HV238242 | | 11-APR 2012 22:45 | LILL | 7917 S DAMEN AV | 7917 S DAMEN AV | EMS | EMS | | | 0611 | 0611 |
| 121027877 | | 11-APR 2012 22:50 | JOE RUDLEGE | 7917 S DAMEN AV | 7917 S DAMEN AV | BATERY IP | BATTERY | SIMPLE BATTERY | | 0611 | 0611 |
| 1417A02212 | | 21-JUN 2012 05:56 | ADT WOO | 7917 S DAMEN AV | 7917 S DAMEN AV | DOMESTIC BATTERY | ALARM BURGLAR | ALARM/OTHER POLICE SERV | | 0611 | 0611 |
| 12840007 | | 02-JUL 2012 03:11 | CRICKET/ANN WILLIAM | 7917 S DAMEN AV | 7917 S DAMEN AV | CRIM SEX ASSLT JO | CRIM SEX ASSLT | MISC INC NO PERSON FND | | 0611 | 0611 |
| 12188l2603 | | 06-JUL 2012 16:02 | CRICKET/FEMALE CITZ ANN | 7917 S DAMEN AV | 7917 S DAMEN AV | CRIM DAM TO PROP IP | CRIM DAM TO PROP IP | MISC INC NO PERSON FND | | 0611 | 0611 |
| 12188l2615 | | 06-JUL 2012 16:02 | G WILLIAMS | 7917 S DAMEN AV | 7917 S DAMEN AV | THEFT IP | THEFT IP | | | 0611 | 0611 |
| 12204l6340 | | 22-JUL 2012 19:25 | G WILLIAMS | 7917 S DAMEN AV | 7917 S DAMEN AV | NO POLICE SERVICE | NO POLICE SERVICE | | | 0611 | 0611 |
| 12207/02/75 | | 25-JUL 2012 14:14 | MALE CALLER | 7917 S DAMEN AV | 7917 S DAMEN AV | NO POLICE SERVICE | NO POLICE SERVICE | FILED EVENT | | 0611 | 0611 |
| 12219011.16 | | 08-AUG 2012 01:27 | YOLANDA LESLIE | 7917 S DAMEN AV | 7917 S DAMEN AV | DOMESTIC BATTERY | DOMESTIC BATTERY | DOM DIST I PLACE IN STORED | | 0611 | 0611 |
| 12219033.59 HV41649 | | 06-AUG 2012 06:32 | VERIZON WIRELESS M | 7917 S DAMEN AV | 7917 S DAMEN AV | PERSON WITH A KNIFE | | ASSAULT AGG KNIFE | | 0611 | 0611 |
| 12219089+1 | | 06-AUG 2012 13:32 | MS LESLIE | 7917 S DAMEN AV | 7917 S DAMEN AV | DOMESTIC DISTURBANCE | DOMESTIC DISTURBANCE | DOM DIST NO PERSON FND | | 0611 | 0611 |
| 122183*10 | | 06-AUG 2012 13:39 | US CELLULAR MS LESL | 7917 S DAMEN AV | 7917 S DAMEN AV | DOMESTIC DISTURBANCE | DOMESTIC DISTURBANCE | DOM DIST NO PERSON FND | | 0611 | 0611 |
| 12236967.4 | | 06-AUG 2012 14:09 | US CELLULAR | 7917 S DAMEN AV | 7917 S DAMEN AV | NO POLICE SERVICE | | FILED EVENT | | 0611 | 0611 |
| 12232/1690 | | 19-AUG 2012 20:47 | ADT/SHANITA | 7917 S DAMEN AV | 7917 S DAMEN AV | ALARM BURGLAR | ALARM BURGLAR | ALARM/OTHER POLICE SERV | | 0611 | 0611 |

4/22/20..

CITY

Service Calls Search Results

| Date | Caller | Address | Call Type | Description | Code | | |
|---|---|---|---|---|---|---|---|
| 27-AUG 2012 23:46 | MARY HERRON | 7917 S DAMEN AV | 7917 S DAMEN AV | BATTERY IP | BATTERY IP | MISC INC OTH POLICE SER | 0611 | 0611 | 6111 |
| 31-AUG 2012 07:32 | US CELLULAR LESLIE | 7917 S DAMEN AV | 7917 S DAMEN AV | ROBBERY VICTIM INJURED | ROBBERY VICTIM INJURED | | 0611 | 0611 | 6111 |
| 31-AUG 2012 07:32 | US CELLULAR DANNY ST | 7917 S DAMEN AV | 7917 S DAMEN AV | ROBBERY VICTIM INJURED | ROBBERY VICTIM INJURED | BATTERY AGGRAVATED OTHER | 0611 | 0611 | 6111 |
| 31-AUG 2012 07:35 | US CELLULAR | 7917 S DAMEN AV | 7917 S DAMEN AV | ROBBERY VICTIM INJURED EMS | ROBBERY VICTIM INJURED | | 0611 | 0611 | 6111 |
| 31-AUG 2012 07:35 | US CELLULAR / JAMES | 7917 S DAMEN AV | 7917 S DAMEN AV | ROBBERY VICTIM INJURED | ROBBERY VICTIM INJURED | | 0611 | 0611 | 6111 |
| 08-SEP 2012 19:50 | CRICKET | 7917 S DAMEN AV | 7917 S DAMEN AV | ROBBERY VICTIM INJURED | ROBBERY VICTIM INJURED | | 0611 | 0611 | 6111 |
| 04-NOV 2012 16:14 | ADT CHASITY | 7917 S DAMEN AV | 7917 S DAMEN AV | CHECK WELL BEING ALARM BURGLAR | CHECK WELL BEING | | 0611 | 0611 | 6111 |
| 01-JAN 2012 02:02 | | 7917 S DAMEN | 7917 S DAMEN AV | ALARM BURGLAR TRAFFIC STOP (OV) | ALARM BURGLAR | MISC INC NO POLICE SERV | 0611 | 0611 | 6122 |
| 01-JAN 2013 21:57 | CRICKET-ANN | 7917 S DAMEN | 7917 S DAMEN AV | TRAFFIC STOP (OV) | TRAFFIC STOP (OV) | ALARM/OTHER POLICE SERV | 0611 | 0611 | 6111 |
| 01-APR 2013 22:01 | AT&T MOBILITY/JOE R | 7917 S DAMEN AV | 7917 S DAMEN AV | ASSAULT IP | ASSAULT IP | | 0611 | 0611 | 6111 |
| 28-APR 2013 10:38 | CRICKET - ANNE | 7917 S DAMEN AV | 7917 S DAMEN AV | ASSAULT IP | ASSAULT IP | ASSAULT SIMPLE | 0611 | 0611 | X641 |
| 17-MAY 2013 10:34 | WILL | 7917 S DAMEN AV | 7917 S DAMEN AV | BATTERY IP | BATTERY IP | BATT/DOMESTIC BATT | 0611 | 0611 | 6111 |
| 03-SEP 2013 00:05 | | 7917 S DAMEN | 7917 S DAMEN AV | DOMESTIC DISTURBANCE | DOMESTIC DISTURBANCE | DOM DIST/ADV LEGAL HELP | 0611 | 0611 | 642 |
| 01-SEP 2013 00:13 | | 7917 S DAMEN | 7917 S DAMEN AV | DOMESTIC DISTURBANCE | DOMESTIC DISTURBANCE | DOM DEST /PEACE RESTORD | 0611 | 0611 | 6111 |
| 01-SEP 2013 18:31 | 1 MOBILE USA Y | 7917 S DAMEN AV | 7917 S DAMEN AV | TRAFFIC STOP (OV) | TRAFFIC STOP (OV) | | 0611 | 0611 | 641 |
| 26-SEP 2013 16:31 | YOLONDA | 7917 S DAMEN AV | 7917 S DAMEN AV | STREET STOP | STREET STOP | | 0611 | 0611 | 6111 |
| 12-NOV 2013 19:37 | FEMALE CITZ | 7917 S DAMEN AV | 7917 S DAMEN AV | ASSAULT IP | ASSAULT IP | | 0611 | 0611 | 6111 |
| 24-DEC 2013 13:32 | MS LOVE | 7917 S DAMEN AV | 7917 S DAMEN AV | EMS | EMS | MISC INC OTH POLICE SER | 0611 | 0611 | 6144 |
| 20-JAN 2014 05:34 | LAVITA ADT | 7917 S DAMEN AV | 7917 S DAMEN AV | DOMESTIC DISTURBANCE | DOMESTIC DISTURBANCE | FILED EVENT | 0611 | 0611 | 6144 |
| 22-JAN 2014 09:04 | JOE RUTLEDGE | 7917 S DAMEN AV | 7917 S DAMEN AV | ALARM PANIC | ALARM PANIC | ALARM/OTHER POLICE SERV | 0611 | 0611 | 6124 |
| 01-FEB 2014 21:49 | ADT HEATHER | 7917 S DAMEN AV | 7917 S DAMEN AV | FOUND PROPERTY | FOUND PROPERTY | | 0611 | 0611 | 6111 |
| 07-FEB 2014 15:58 | ADT OPER GXO | 7917 S DAMEN AV | 7917 S DAMEN AV | ALARM PANIC | ALARM PANIC | ALARM/OTHER POLICE SERV | 0611 | 0611 | 6111 |
| 10-FEB 2014 21:56 | SPRINT/GARY WILLIAMS | 7917 S DAMEN AV | 7917 S DAMEN AV | ALARM PANIC | ALARM PANIC | ALARM/OTHER POLICE SERV | 0611 | 0611 | 6124 |
| 14-FEB 2014 23:43 | AT&T MOBILITY MR HUT | 7917 S DAMEN AV | 7917 S DAMEN AV | EMS | EMS | ALARM/OTHER POLICE SERV | 0611 | 0611 | 6124 |
| 15-FEB 2014 00:01 | YOLANDA RUTLEDGE | 7917 S DAMEN AV | 7917 S DAMEN AV | AUTO ACCIDENT PD | AUTO ACCIDENT PD | FILED EVENT | 0611 | 0611 | 612 |
| | | | 7917 S DAMEN AV | AUTO ACCIDENT PD | AUTO ACCIDENT PD | TRAF ACC/OTHER POL SER | 0611 | 0611 | 6111 |

CITY
0056

4/22/2014

## Service Calls Search Results

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1404704776 | MK153098 | 16-FEB-2014 10:05 | MR RUTLEDGE | 7917 S DAMEN AV | 7917 S DAMEN AV | AUTO ACCIDENT / PD | TRAFFIC ACCIDENT | 0611 |
| 140700274S | | 11-MAR-2014 06:47 | ADT-WME | 7917 S DAMEN AV | 7917 S DAMEN AV | ALARM HOLD UP | ALARM/OTHER POLICE SERV | 0611 |
| 1407003314 | | 14-MAR-2014 05:28 | ADT #YAC | 7917 S DAMEN AV | 7917 S DAMEN AV | ALARM HOLD UP | ALARM/NO POLICE SERV | 0611 |
| 1407409870 | | 15-MAR-2014 15:22 | OPER UY2 | 7917 S DAMEN AV | 7917 S DAMEN AV | ALARM PANIC | ALARM/NO POLICE SERV | 0611 |
| 140741157? | | 15-MAR-2014 17:09 | CRICKET | 7917 S DAMEN AV | 7917 S DAMEN AV | ALARM PANIC | ALARM/OTHER POLICE SERV | 0611 |
| 140741725 | | 15-MAR-2014 17:17 | YOLANDA | 7917 S DAMEN AV | 7917 S DAMEN AV | CHECK WELL BEING | CHECK WELL BEING | 0611 |
| 140742129 | | 15-MAR-2014 17:41 | CRICKET YOLAND LO | 7917 S DAMEN AV | 7917 S DAMEN AV | DOMESTIC DISTURBANCE 3-1-1 | DOM DIST ADV LEGAL-HELP | 0611 |

FILED EVENT

This results table currently has 50 records in it.

10 A

CITY
0057